*In re* LUIS E. COLÓN RAMERY.

*Número:* MC-89-15      *Resuelto:* 8 de junio de 1993

*Rafael Ortiz Carrión, Procurador General,* y *Eliadís Orsini Zayas, Procuradora General Auxiliar,* abogados de El Pueblo; *Luis E. Colón Ramery, pro se; Iván Díaz de Aldrey,* abogado de la Asociación de Notarios de Puerto Rico; *Nora L. Rodríguez Matías,* Presidenta del Colegio de Abogados de Puerto Rico; *Antonio Arraiza Morales,* abogados del Colegio de Abogados de Puerto Rico.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

Debemos resolver en el presente caso si incurre o no en un conflicto de intereses un abogado-notario ante el cual se otorga determinado documento y luego éste reclama judicialmente en representación de una de las partes otorgantes para exigir las contraprestaciones contenidas en dicho documento.

I

*Hechos*

En agosto de 1977 el Banco Financiero de Ahorro de Ponce (en adelante el Banco) aprobó una solicitud de préstamo a la corporación Ebanistería La Ponceña, Inc. (en adelante Ebanistería) por la cantidad de setenta mil dólares ($70,000). El motivo por el cual se gestionó dicho prés-

tamo por Ebanistería fue para adquirir un predio de terreno.

A tales efectos, se celebró una reunión entre el dueño (vendedor) del terreno, el Sr. Roberto Vidal Ortiz, Presidente de Ebanistería, funcionarios del Banco y el Lcdo. Luis E. Colón Ramery. En dicha reunión se acordó por las partes que el licenciado Colón Ramery, abogado del Banco, preparara todos los documentos legales necesarios para poder realizar la transacción acordada. De manera que el 10 de agosto de 1977 se otorgaron las Escrituras Números Ciento Treinta y Cuatro (134) de Compraventa, las Escrituras Números Ciento Treinta y Cinco (135) y Ciento Treinta y Seis (136) de Cancelación de dos (2) Hipotecas que gravaban la propiedad, y la Escritura Número Ciento Treinta y Siete (137) de Hipoteca en Garantía de Pagaré.

Transcurridos unos cuantos meses luego de haberse otorgado los instrumentos públicos antes mencionados, el Banco se percató que la garantía colateral brindada por Ebanistería para la concesión del préstamo que se le aprobó no era suficiente. Por tal razón, se procedió a celebrar una reunión con el señor Vidal Ortiz, funcionarios del Banco y el licenciado Colón Ramery. Allí se le informó al señor Vidal Ortiz que era necesario aumentar su colateral, y que para ello se recomendaba que se otorgara una escritura constitutiva de hipoteca de bienes muebles. El señor Vidal Ortiz accedió a ello, por lo que facilitó al Banco una lista de todo el equipo de Ebanistería que habría de ser hipotecado y el valor del mismo. Así las cosas, se procedió al otorgamiento de la Escritura Número Tres (3) sobre Hipoteca de Bienes Muebles de 9 de enero de 1978.

Posteriormente, Ebanistería fue demandada por Superior Paint Manufacturing Co. Inc. (en adelante Superior Paint) en cobro de dinero. A consecuencia de este pleito, Superior Paint embargó en aseguramiento de sentencia varias máquinas propiedad de Ebanistería. El propio señor Vidal Ortiz informó al Banco de lo acontecido, por lo que el

licenciado Colón Ramery intervino en representación de los intereses del Banco. Finalmente, luego de una estipulación presentada por la parte interventora, el Banco, y Superior Paint, el tribunal de instancia dictó una sentencia el 17 de mayo de 1978 mediante la cual dejó sin efecto la orden de embargo de 27 de abril del mismo año. La razón que adujo para ello fue que el Banco interventor tenía preferencia sobre los bienes embargados en virtud de la escritura de hipoteca de bienes muebles constituida a su favor por Ebanistería.

En enero de 1979, Ebanistería estaba atrasada en el pago del préstamo que le concediera el Banco. Luego de varios requerimientos para que cumpliera con el pago de lo adeudado sin que se lograra resultado positivo alguno, el Banco presentó una demanda en cobro de dinero y ejecución de hipoteca mediante la vía ordinaria. Civil Núm. CS-79-211. Dicha demanda fue presentada por el licenciado Colón Ramery.

Luego de haber celebrado una vista en rebeldía a la cual no compareció la parte demandada, el tribunal de instancia dictó una sentencia a favor de la parte demandante, el Banco. Determinó que el Banco era el tenedor de un pagaré hipotecario y que "[l]a parte demandada actual dueña del inmueble descrito no ha satisfecho dicha hipoteca así como los pagos mensuales que la misma garantiza". Además, determinó que "[l]os demandados Ebanistería La Ponceña Incorporado, Roberto Vidal y Carmen D. Aparicio de Vidal, adeudan a la parte demandante la suma de $68,556.82 de principal, $4,756.00 de intereses hasta ... el total pago de la deuda a razón de $528.45 mensual; $370.80 por concepto de recargos en el préstamo hasta el 30 de octubre de 1978 y los que surjan hasta el total pago de la deuda a razón de $41.20 mensual; $293.92 por concepto de seguro de riesgo de la propiedad y $7,000.00 para costas, gastos y honorarios de abogados".

Asimismo concluyó que "[l]os co-demandados Ebanistería La Ponceña Inc[.], Roberto Vidal y Carmen D. Aparicio de Vidal adeudan además al demandante Banco Financiero de Ahorro de Ponce la suma de $4,000.00 de principal; $256.54 de intereses hast[a] el día 30 de octubre de 1978 y los que se devenguen hasta el total pago de la obligación y $400.00 para costas y honorarios de abogados". Por lo tanto, se ordenó la venta en pública subasta de la propiedad inmueble hipotecada.

Con posterioridad al caso antes mencionado, el 14 de noviembre de 1980 el señor Vidal Ortiz presentó una demanda de nulidad de hipoteca de bienes muebles y daños y perjuicios contra el Banco y el licenciado Colón Ramery (Civil Núm. CS-80-9828). Alegó en la demanda que la escritura constitutiva de hipoteca de bienes muebles era una simulada, ya que el Banco jamás hizo desembolso de dinero alguno por la cantidad en que se valoraron dichos bienes. Adujo que la intención del Banco y su representante legal, el licenciado Colón Ramery, fue evitar que otros acreedores de Ebanistería ejecutaran o le reclamaran judicialmente sus acreencias. Ante esa situación, el señor Vidal Ortiz alegó que él firmó la escritura antes aludida, siguiendo el consejo y la orientación del licenciado Colón Ramery.

A pesar de lo alegado por el señor Vidal Ortiz, éste desistió de la acción contra el licenciado Colón Ramery, por lo que se archivó con perjuicio el caso contra éste mediante sentencia parcial dictada el 6 de marzo de 1981. No obstante, se continuó la reclamación contra el Banco.

Así las cosas, el Banco presentó una moción de desestimación alegando que la parte demandante, señor Vidal Ortiz, estaba impedida de ir contra sus propios actos toda vez que tuvo la oportunidad de hacer su reclamación en el caso anterior que se había ventilado en rebeldía (Civil Núm. CS-79-251) y no lo hizo. El no haberlo hecho significa que

la sentencia dictada en dicho caso constituía un impedimento colateral para continuar con el caso (Civil Núm. 80-9828), por cuanto se intentaba con este último litigar cuestiones ya litigadas y adjudicadas o que pudieron ser litigadas o adjudicadas en el pleito anterior. Finalmente, el tribunal de instancia dictó sentencia a favor del Banco, el 5 de mayo de 1982, acogiendo la defensa de impedimento colateral por sentencia.

Años más tarde, el señor Vidal Ortiz presentó una querella contra el licenciado Colón Ramery ante el Procurador General de Puerto Rico, la que es objeto de este procedimiento.[1]

En el Informe que rindiera el Procurador General se concluye que la alegación de la nulidad de la escritura constitutiva de hipoteca de bienes muebles fue "afectada desde el inicio de los procedimientos: En primera instancia al inicio del pleito se allanaron a sacar del mismo al notario Colón Ramery. En segundo lugar, era *sólo mediante esta alegación* que mejor se podía impugnar la deuda existente. Pero, vistos los documentos admitidos, ellos derrotan precisamente la alegación ... pero según el curso del caso no la puede probar o sostener a través del procedimiento. (Así surge de la Orden de la Conferencia con Antelación al Juicio del 29 de septiembre de 1981 en el expediente del caso)". Además, sí hubo desembolso de dinero por la cantidad de setenta mil dólares ($70,000). De manera que la

---

[1] Cabe señalar, que el 17 de marzo de 1980 el señor Vidal Ortiz presentó queja contra el licenciado Colón Ramery ante la Comisión de Ética Profesional del Colegio de Abogados de Puerto Rico. El 10 de octubre de 1984, el entonces Presidente de la Comisión de Ética Profesional, Lcdo. Roberto Busó Aboy, notificó al licenciado Colón Ramery que se había acordado archivar la queja presentada en su contra "por considerar que no hay causa probable de violación a los cánones de ética en los hechos alegados".

No obstante, con relación a la presente querella, el Colegio de Abogados de Puerto Rico ha comparecido sosteniendo la posición de que "resultaría incompatible permitir el desempeño del notario, como abogado reclamante, si la participación de éste en su función notarial fuese una de naturaleza activa o determinante en el proceso de negociación y posterior concertación del Negocio Jurídico".

hipoteca de bienes muebles vino a garantizar la cantidad concedida en préstamo.

En cuanto a la segunda imputación que se le hace al licenciado Colón Ramery, a los efectos de que incurrió en conflicto de intereses al supuestamente asesorar legalmente al señor Vidal Ortiz al momento de otorgar la escritura de hipoteca de bienes muebles y luego comparecer como abogado del Banco en el pleito de cobro de dinero y ejecución de hipoteca, el Procurador General expresa lo siguiente: "somos de opinión que; visto desde el punto de vista del Canon 21 de los de Conducta Profesional, toda la prueba recopilada tiende a demostrar que el abogado intervino *siempre*, en todos los incidentes relacionados con el Sr. Roberto Vidal Ortiz y/o Ebanistería La Ponceña, en *calidad de abogado y notario del Banco*."

Nos advierte, sin embargo, que a pesar de que es una práctica generalizada que los abogados de los bancos preparen las escrituras de hipoteca y luego comparezcan representando a los mismos en cobro de dinero y ejecución de hipoteca, tal práctica no debería permitirse. Nos indica que sobre este asunto en específico no nos hemos expresado, por lo que sugiere que la norma que se establezca por este Tribunal sea con carácter prospectivo. Por lo tanto, nos plantea dos (2) cuestiones de derecho:

1.  Si es apropiado permitir que los notarios en Puerto Rico puedan reclamar, en representación de alguna de las partes otorgantes de un documento otorgado ante él, las contraprestaciones contenidas en el documento otorgado ante él por las mismas partes.
2.  Determinar si dicha gestión denota un conflicto de interés, *visto el hecho desde la perspectiva de las incompatibilidades*, por razón de la doble gestión simultánea que realizan los notarios en Puerto Rico en relación a los otorgantes: Actuan [sic] como notarios en el perfeccionamiento de un documento que recoge un negocio jurídico acordado por los otorgantes y, actuan [sic] como abogados de los otorgantes en su obligación de orientarlos por igual, en cuanto a las consecuencias y alcance jurí-

dico del negocio concretado en el documento otorgado ante él mismo como notario.

Sometidos los Informes de la Asociación de Notarios de Puerto Rico y del Colegio de Abogados, estamos en posición de resolver.

## II

Hoy nuevamente tenemos que expresarnos sobre la tan importante función que desempeña el abogado-notario. En reiteradas ocasiones hemos sostenido que el abogado tiene que desempeñarse con dignidad y alto sentido del honor, aunque el así hacerlo le represente ciertos sacrificios personales. Asimismo, hemos recalcado que éste tiene el deber de evitar hasta la apariencia de conducta profesional impropia. Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX; *In re Meléndez Pérez*, 104 D.P.R. 770, 772 esc. 1 (1976); *In re Cancio Sifre*, 106 D.P.R. 386, 398–399 (1977); *In re Rojas Lugo*, 114 D.P.R. 687, 691 (1983). Esta norma de conducta adquiere mayor relevancia cuando se examina la actuación del abogado en su función como notario, puesto que éste representa la fe pública notarial.

Es precisamente esta representación de la fe pública notarial la que establece la diferencia entre la función que desempeña el abogado y la del notario. Por ello hemos señalado que:

El ejercicio de la abogacía y el del notariado son dos cosas distintas. El abogado notario ha de ser escrupuloso en deslindar los campos. El abogado representa los intereses de un cliente. *El notario no representa a cliente alguno. Representa la fe pública.* Es el testigo por excelencia que ha de dar forma al negocio convenido, y ha de advertir a los otorgantes de los aspectos legales del instrumento que ellos otorgan y que él autoriza. El notario no es, en esa función, abogado de ninguno de los otorgantes. (Énfasis suplido.) *In re Lavastida et al.*, 109 D.P.R. 45, 86 (1979), opinión del Juez Asociado Señor Irizarry Yunqué.

■ Lo anteriormente citado significa que el abogado-notario tiene que ser imparcial. Independientemente de que uno de los otorgantes lo haya contratado como abogado previamente, éste tiene la obligación de asesorar bien y por igual a ambos otorgantes. No puede, bajo circunstancia alguna, inclinar la balanza en favor de uno u otro de los otorgantes por el mero hecho de que su cliente de asesoría sea parte. En *In re Meléndez Pérez*, supra, págs. 774–775, advertimos que:

> Por tradición, y en nuestra patria además por expresión legislativa, el notario no es simple observador del negocio jurídico que ante él se realiza limitando su actuación a cerciorarse de la identidad de partes y autenticidad de las firmas. Su función, que no es privada, sino pública, trasciende la de un autómata legalizador de firmas y penetra al campo de legalidad de la transacción que ante él se concreta. ¿Cómo guardar silencio ante una situación lesiva para cualquiera de los otorgantes, si su entrenamiento legal le hace testigo de la irregularidad? ¿Para qué otra cosa sirve su profesión de abogado por ley puesta a disposición de las partes en su despacho notarial? *En su deber de ilustrar, y dar consejo legal a las partes contratantes, no hay guardarraya que separe al notario del abogado.* El notario que impasible ve consumarse en su presencia un pacto cuyas consecuencias legales ignora alguna de las partes o que pudiendo hacerlo, por ser abogado, rehúsa explicar a los menos informados del significado y proyecciones de cláusulas para ellos poco menos que ininteligibles; el notario que limita su intervención rutinaria a leer o dar a leer el documento a los otorgantes y asegurarse de la identidad de sus personas y firmas, en un ritual aséptico pero vacío de la inteligencia y comprensión de los firmantes, está con su desidia derrotando los fines y propósitos que le hicieron depositario de inapreciable confianza pública. (Énfasis suplido.)

■ De manera que lo que guía la actuación del notario es la certeza y limpieza en los actos cuya autenticación se le encomienda. Por tal razón, hemos permitido que los abogados-notarios de instituciones financieras sean los que autoricen los documentos que constituyen la garantía de su dinero, puesto que "[e]l abogado no es empleado de su cliente y mantiene una independencia en sus determina-

ciones profesionales que propicia su intervención como notario en actos y contratos en que su cliente de asesoría es parte. De ahí que esa relación no esté proscrita en la Ley Notarial". (Escolio omitido.) *In re Cancio Sifre*, supra, pág. 398.

Ahora bien, el deber que tiene el notario de aconsejar a los otorgantes por igual, ¿lo convierte automáticamente en abogado de aquel que no es su cliente de asesoría?, según parece entender el querellante señor Vidal Ortiz. La contestación es en la negativa. La Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987 (4 L.P.R.A. sec. 2001 *et seq.*), le impone al notario una función dual: la de instrumentador del documento notarial y la del profesional del Derecho que asesora y aconseja legalmente a los otorgantes. Tal obligación surge

> [c]uando por Ley del 8 de marzo de 1906 se instauró la práctica del notariado, exclusivamente por abogados admitidos al ejercicio de la profesión, se elevó la calidad de la fe pública en Puerto Rico, y simultáneamente se exigió de los notarios una mayor aportación técnica, una mejor ilustración y consejo que realzara la percepción por los contratantes de los particulares y consecuencias de su aceptación del documento sometido para su firma. S. Torres Peralta, *La nueva Ley Notarial de Puerto Rico*, 48 (Núm.3) Rev. C. Abo. P.R. 8–9 (1987).

No obstante, la nueva Ley Notarial de Puerto Rico, Ley Núm. 75, *supra*, en su exposición de motivos claramente expresa que el notario no es abogado de ninguna de las partes, por lo que en esa función no representa a cliente alguno. Es decir, el notario representa la ley para todas las partes.

Por lo tanto, técnicamente hablando el licenciado Colón Ramery no incurrió en conflicto de intereses, según definido en el Canon 21 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX,[2] al presentar una demanda en cobro de

---

[2] El Canon 21 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, en su parte pertinente, dispone:

dinero y ejecución de hipoteca por la vía ordinaria en favor del Banco y contra el señor Vidal Ortiz, ya que no representó a ninguno de los dos. Simplemente, en su capacidad como notario, les aconsejó y advirtió sobre el alcance de realizar una escritura constitutiva de hipoteca de bienes muebles, deber que le impone la Ley Notarial de Puerto Rico. De otra parte, en esa función no se ha demostrado que el licenciado Colón Ramery indujera a error al señor Vidal Ortiz con relación a la naturaleza de la transacción efectuada entre este último y el Banco. No le coaccionó a firmar la escritura objeto de la controversia ni le indujo a firmarla mediante engaño. Ni siquiera se alega que el licenciado Colón Ramery no explicara adecuadamente al señor Vidal Ortiz el alcance de la transacción efectuada entre las partes. El licenciado Colón Ramery, sin embargo, no debió haber comparecido como abogado del Banco para exigir judicialmente al señor Vidal Ortiz la contraprestación a la cual éste se obligó en el documento notarizado por él.[3] Veamos por qué.

En ocasiones anteriores hemos repudiado en la acción civil "la figura confusa de abogado y notario en el mismo caso como germen con potencialidad de serio conflicto ético". *In re Carreras Rovira y Suárez Zayas*, 115 D.P.R. 778, 787 (1984), y casos allí citados. No debemos olvidar que la naturaleza y función del notario en Puerto Rico está

---

"No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente."

Tampoco estamos ante la situación particular de que se le hayan hecho ciertas comunicaciones al abogado que por su naturaleza confidencial automáticamente lo descalifican para representar a la parte contraria. Recordemos que "[l]as instrucciones o comunicación a un notario no son privilegiadas. Un notario se diferencia de un abogado en cuanto a esto." *Tomás Cano & Co. v. Robles et al.*, 32 D.P.R. 643, 648 (1923).

[3] Tenemos que llamar la atención al hecho de que lo que motiva la querella es precisamente la apariencia de impropiedad del licenciado Colón Ramery la que, desde la perspectiva del querellante, un lego, es un conflicto de intereses. Cabe además señalar que en este caso hubo cierta incomprensión por parte del querellante en cuanto a la función que desempeña el notario.

enmarcada dentro de la trayectoria del notario de tipo latino. *In re Colón Muñoz*, 131 D.P.R. 121 (1992). El notario latino es un profesional del Derecho que ejerce una función pública la cual consiste en

> ... recibir, ·interpretar y dar forma legal a la voluntad ́de las partes, dar fe de los hechos, redactar los instrumentos adecuados a ese fin, conferirles autenticidad, conservar los originales de éstos y expedir copias que den fe de su contenido. En dicha función el notario puertorriqueño representa la fe pública y la ley para todas las partes. ...
>
> Como profesional del Derecho tiene la misión de asesorar a quienes reclamen su ministerio y aconsejarles los medios jurídicos más adecuados para el logro de los fines lícitos que aquéllos se proponen alcanzar.
>
> En su función pública ejerce la fe pública notarial, la cual conlleva un doble contenido, a saber: (1) en la esfera de los hechos, la exactitud de lo que el notario ve, oye o percibe por sus sentidos, y (2) en la esfera del Derecho confiere autenticidad y fuerza probatoria a las declaraciones de voluntad de las partes en el instrumento público redactado conforme a su juicio sobre los preceptos del ordenamiento jurídico para la validez y eficacia del acto o contrato formalizado, y sobre la identidad y capacidad de las partes. *In re Colón Muñoz*, supra, págs. 127–128.

Por tal razón, el notario está impedido en el descargo de la fe pública que él representa de tomar partido a favor de uno de los otorgantes. La imparcialidad debe regir sus actuaciones. Para el notariado latino este elemento de la imparcialidad es de vital importancia; tan es así que en aquellos países donde se permite la función dual de abogado-notario no basta con ser imparcial, sino que también hay que aparentarlo. A esos efectos se han establecido normas muy estrictas; veamos:

> "... donde el notario ejerce simultáneamente el oficio de abogado el derecho profesional le impone aún mayores restricciones. El deber de imparcialidad al que está sujeto como notario repercute también en su actuación como abogado. Los efectos del derecho profesional del notario sobre el de abogado en caso de unión de ambas profesiones en la de abogado-notario no son en particular indiscutidos. La prescripción delimitativa

fundamental se halla incorporada en el Estatuto Federal de Abogados. Prohíbe al abogado-notario la actuación como abogado si el litigio versa sobre el contenido o la interpretación de un documento que él o su socio han protocolizado como notarios. Pero esta prohibición no acota las obligaciones del abogado-notario. El abogado-notario se halla dentro de un doble círculo de deberes. El derecho profesional de abogado y el de notario rigen conjuntamente. En caso de ser el uno, por lo general el de notario, más riguroso que el otro, el estado de las cosas ha de juzgarse según el derecho más estricto. El deber notarial de imparcialidad prohíbe al abogado-notario, al cabo de una actuación notarial anterior para una parte interesada lealmente en el acto notarial, intervenir a continuación en un procedimiento que se haya desarrollado del acto notarial y que se refiera al mismo acontecimiento que el acto notarial en cuestión." (Escolio omitido.) E. Bautista Pondé, *Origen e Historia del Notariado*, Buenos Aires, Eds. Depalma, 1967, págs. 461–462.

■ Hemos expresado reiteradamente que el abogado y el notario, todavía más, tienen que evitar hasta la apariencia de conducta profesional impropia. Un abogado-notario que reclama judicialmente en representación de una de las partes otorgantes de un documento, para exigir la contraprestación a la que se obligó la otra parte en el documento, da la falsa impresión de que siempre estuvo parcializado con la parte en representación de la cual reclama. Ello, claro está, cuando se trata de reclamaciones de índole contenciosa. De permitirse tal práctica estaríamos ocasionándole un grave daño a la institución del notariado y, sobre todo, a la fe pública notarial. Y es que "[d]ebe recordarse que la apariencia de impropiedad puede ser muy lesiva al respeto de la ciudadanía por sus instituciones de justicia y por la confianza que los clientes depositan en sus abogados". *In re Rojas Lugo*, supra, pág. 690.

Por otra parte, no podemos perder de vista que la relación entre prestamista y prestatario es desigual y que el notario, que a su vez es abogado del banco, se encuentra ante el denominado cliente poderoso. Dicho cliente está deseoso de concluir rápidamente el negocio sin que nada venga a entorpecer el mismo. Del otro lado se encuentra el

prestatario quien, no hay lugar a dudas, es la parte más débil por cuanto quiere obtener el préstamo solicitado y, por lo general, acepta sin protestar las condiciones que se le imponen. De manera que existe el peligro de que " 'el Notariado, por primera vez en su historia, falte a su fundamental deber de imparcialidad. Peligro grande, porque el Notario tiene que optar entre el fuerte y el débil, entre la facilidad y la dificultad; y, por encima de todo, por la tentación que surge de tratar al prójimo como 'elite', con todas las alusiones a una pretendida superioridad cultural y moral que este concepto lleva consigo' ". *In re Lavastida et al.,* supra, pág. 95, opinión concurrente y disidente del Juez Asociado Señor Negrón García.

Además, hay que tomar en consideración que el Canon 22 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, dispone que un abogado debe evitar testificar en beneficio o en apoyo de su cliente y renunciar su representación cuando adviene en conocimiento de que puede ser llamado a declarar en su contra. En toda acción en la que un instrumento notarial sea el objeto de la controversia, el notario siempre es testigo silente. Cabe señalar, también, que siempre existe la posibilidad de que el notario sea llamado a testificar en apoyo de uno u otro de los otorgantes.[4]

---

[4] Por esta razón, en su voto disidente los Comisionados, Prof. Cándida Rosa Urrutia y el Lcdo. Eugenio Otero Silva, expresaron en relación con la Regla 5 del Proyecto de Reglamento Notarial de Puerto Rico que ésta debería leer como sigue:

" 'El Notario está impedido de representar a un cliente como abogado en la litigación contenciosa y a la vez servirle de Notario en el mismo caso por el posible conflicto de intereses o incompatibilidades que puedan dimanar del mismo. Sin embargo, una vez la sentencia advenga final, firme y ejecutable, podrá autorizar las escrituras que resulten necesarias, tales como las de venta judicial y de partición.

" 'El Notario está impedido de actuar consecuentemente como abogado en aquellos casos en que autorizó el documento que posteriormente requiere acción judicial para obligar a su cumplimiento por los posibles conflictos de intereses o incompatibilidades que puedan dimanar de tal actuación. Específicamente no podrá actuar como abogado en ejecuciones de hipoteca como consecuencia de una escritura que haya autorizado.

" 'El Notario podrá actuar dualmente, como tal y como abogado, en toda acción de jurisdicción voluntaria (ex-parte), tales como expedientes de dominio, protocolizaciones de testamento, declaratorias de herederos, autorizaciones judiciales y otras similares, siempre que tal actuación dual no esté prohibida expresamente.

La Asociación de Notarios de Puerto Rico (en adelante la Asociación) alega que es incorrecto enfocar la actuación del licenciado Colón Ramery desde el punto de vista de las incompatibilidades. Argumenta la Asociación que no hay tal incompatibilidad de acuerdo con la norma enunciada en *García O'Neill v. Cruz*, 126 D.P.R. 518 (1990), ya que en el caso de autos no están envueltos dos cargos incompatibles. Sostiene que la abogacía no es incompatible con la notaría. No le asiste la razón. Aunque la notaría y la abogacía, como regla general, no son incompatibles, en ciertas ocasiones, como la de autos, el simultanear ambas funciones con relación a un *mismo asunto* sí resulta incompatible por la apariencia de conducta parcializada impropia que se produce.

Sobre este particular, en *In re Carreras Rovira y Suárez Zayas*, supra, pág. 788, expresamos que:

> Por su naturaleza, al hablar de intereses encontrados, penetramos la dimensión de las incompatibilidades. Incompatibilidad es término equivalente a antagonismo, oposición, repugnancia que tiene una cosa para unirse con otra, o dos o más personas entre sí. También se refiere a la imposibilidad legal de simultanear dos o más cargos, funciones o misiones una misma persona. El primer significado alude al orden físico, el segundo toca el aspecto moral y el último afecta el orden legal. En materia deontológica se acepta que uno de los requisitos para el ejercicio de la abogacía es la compatibilidad de la actuación con la situación y circunstancias.

Tampoco le asiste la razón a la Asociación cuando arguye que sólo en los casos en que se cuestiona o impugna la "legalidad del contrato, se niega la autenticidad de la firma, se reclama incapacidad, se alega dolo o desconoci-

---

" 'No obstante lo anterior, queda siempre al sano juicio del Notario, dentro de su responsabilidad profesional, decidir cuándo debe abstenerse de actuar, aún en casos en que su actuación estaría permitida, pero que por sus particulares circunstancias en la dimensión ética puedan generar un potencial de conflicto.

" 'Las anteriores prohibiciones afectan al Notario personalmente, no afectan a aquellos notarios y abogados que sean sus socios o compañeros de oficina.' " *Borrador del Reglamento Notarial de Puerto Rico*, Conferencia Judicial de P.R., 1991, Votos Disidentes, págs. 2–3.

miento de los términos de la escritura o en otra forma se alega la nulidad del instrumento o la inefectividad del consentimiento", es que el abogado-notario inmediatamente debe retirarse del mismo. No podemos estar de acuerdo con esta interpretación tan amplia de los cánones de ética. Recordemos lo dicho por este Tribunal en *In re Colón Muñoz*, supra, pág. 149, a los efectos de que "[l]a amplitud o lo limitado de la práctica de un notario no debe incidir con la cautela, el esfuerzo, tesón y cuidado con que se debe ejercer y con el cabal cumplimiento de las obligaciones y los deberes que le imponen al notario la ley y los cánones de ética profesional". Por otra parte, una acción en cobro de dinero y ejecución de hipoteca es de carácter contencioso, independientemente del hecho de que a la parte demandada, por no contestar, se le anote la rebeldía y el caso se vea en rebeldía. Las partes en este tipo de pleitos están en posiciones encontradas adversativas no importa el trámite procesal que siga el caso.

Tomando en consideración que la práctica generalizada en la profesión, especialmente entre abogados de bancos e instituciones financieras, es que el abogado-notario que actuó como notario en el otorgamiento de un contrato o instrumento, en ocasión de surgir una reclamación, sea el que lleve el caso relacionado con dicho instrumento o contrato, la norma que hoy enunciamos será de carácter prospectivo.

Debemos, además, hacer extensiva la prohibición que hoy establecemos a los socios o abogados asociados de bufetes pluralizados. Ya en *In re Lavastida et al.*, supra, págs. 92–93, opinión concurrente y disidente del Juez Asociado Señor Negrón García, se había anticipado tal prohibición al señalarse que:

En términos generales, somos de opinión que existe un deber deontológico general implícito en una sociedad de abogados, que recae sobre sus socios de velar y determinar que la práctica y métodos seguidos por todos en la sociedad están a tono con el Código de Etica. Creemos que esta obligación no puede quedar diluida o inmersa en la burocracia oficinesca o pluralidad de

abogados. Por ende, no podemos compartir la tesis de que el abogado, cuando se desempeña en sociedad jurídica —en su condición de socio o como empleado— puede actuar aisladamente en una especie de comportamiento sellado, ajeno y alejado de los asuntos generales profesionales y notariales en que se desenvuelve la asociación. En este sentido corresponde a los socios, en la ordenación de las labores y organización internas, diseñar los mecanismos para mantenerse informados entre sí, y a aquellos otros abogados que laboran en el bufete, de detalles concernientes a los nombres de clientes para evitar infracciones éticas por posibles conflictos de intereses y otros extremos. El efecto de esta interpretación es la de intercalar en los cánones, doquiera que aparezca la palabra "abogado" la expresión "o sus asociados". (Citas omitidas.)

Con relación a la querella presentada contra el licenciado Colón Ramery por el señor Vidal Ortiz, *se dictará sentencia ordenando el archivo del caso. Aparte de la conducta relacionada con la norma que hoy establecemos con carácter prospectivo, no se ha aportado prueba alguna que apoye cualquier otra alegación de conducta impropia de su parte.*

El Juez Asociado Señor Negrón García emitió una opinión de conformidad. Los Jueces Asociados Señores Rebollo López y Alonso Alonso emitieron sendas opiniones disidentes. El Juez Asociado Señor Fuster Berlingeri no intervino.

— O —

Opinión de conformidad del Juez Asociado Señor Negrón García.

I

"En el notario puertorriqueño, por su condición de abogado, se funden dos facetas esenciales en la administración de la justicia. La *primera*, la que surge como profesional del derecho, preparado académica e intelectualmente para

las lides forenses y comparecencias ante foros adjudicativos. Como tal está versado en la técnica jurídica y capacitado para dar consejos y servir de guía a todo interesado, no sólo en este rol, sino en el de notario. En su *segunda* faceta, la de notario, es funcionario público investido de autoridad y con capacidad autenticadora y legalizadora en el plano de las relaciones privadas, imponiendo a los actos que ve y oye —*visu et audit*— una eficacia autenticadora cubierta con una presunción de veracidad, producto neto que parte del supuesto de un leal acatamiento de los requisitos y formalidades de ejercer con fidelidad su encomienda." (Énfasis suplido y en el original.) *In re Lavastida et al.*, 109 D.P.R. 45, 97 (1979), opinión concurrente y disidente.[1]

Puerto Rico es una de las pocas jurisdicciones en que no hay una separación entre el abogado y el notario. Ello, inevitablemente, genera unos efectos particulares, limita grandemente su potencial para asumir otras funciones y, sobre todo, nos impone el deber de fijar parámetros que fortalezcan los valores éticos dimanantes de esa doble función. Véase *B. & L., Inc. v. P.R. Cast. Steel Corp.*, 114 D.P.R. 808, 813 (1983), opinión concurrente.

Sabido es que el notario no limita su labor a transcribir los acuerdos de las partes, sino que orienta y brinda consejos legales. La participación activa comienza en las etapas anteriores del negocio jurídico "en su expresión formal y aún en sus elementos sustantivos",[2] lo cual exige, como requisito fundamental, la observancia de una *escrupulosa imparcialidad*.[3]

---

[1] La Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987 (4 L.P.R.A. sec. 2001 *et seq.*), incorporó expresamente esta visión.

[2] P. Malavet Vega, *El Notariado Puertorriqueño*, Ponce, 1985, pág. 32. Adicionalmente, véase *In re Meléndez Pérez*, 104 D.P.R. 770, 774–775 (1976).

[3] Explica Malavet Vega que:

"[El notario] está colocado en esa etapa anterior que permite el acercamiento de voluntades y la evitación del pleito. De ahí el requisito fundamental de observar una escrupulosa imparcialidad. Pero esa imparcialidad no es la del lego, la del instrumento para la inequidad. Porque es hombre del Derecho, porque se le supone cono-

Bajo este prisma, dejar que el notario autorizante asuma el papel de abogado adversativo y reclame judicialmente las contraprestaciones contenidas en el instrumento de su creación —en representación de una de las partes otorgantes contra otra— vulnera *el principio de imparcialidad* y lo coloca en una situación potencial de conflicto de intereses impermisible.

## II

A tono con nuestra posición en *In re Lavastida et al.*, supra, pág. 92, "a un socio le está vedado violar los cánones, por medios indirectos o mediante el empleo de terceros". Por ende, no albergamos duda de que la norma es extensiva a socios o abogados de un bufete pluralizado u otra agrupación de abogados.

"Realizar el Derecho, según y justicia, no tomar partido a favor de una sola de las partes, conciliar intereses contrapuestos siempre que sea posible, supone en el notario una posición independiente y un espíritu de auténtica libertad." Fernández del Valle, *Misión y Dignidad del Notariado*, XXXI (Núm. 96) Rev. Der. Notarial 119 (1987).

– O –

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Una lectura sosegada de la Opinión que emite una mayoría de los integrantes del Tribunal en el presente caso demuestra que realmente *son dos (2) los fundamentos que, de manera principal, aduce la Mayoría en apoyo de la in-*

---

cedor de la ciencia jurídica. Entran entonces dos deberes coincidentes: orientar hacia la adecuada formulación del negocio jurídico, y evitar la injusticia, la utilización del marco notarial para el abuso del derecho. Porque el notario en su gestión cotidiana no sólo empeña su sabiduría jurídica, sino su honor, su hombría de bien, y en gran medida toda la reputación del notariado." Malavet Vega, *op. cit.*, pág. 37.

*necesariamente estricta y contradictoria norma que hoy implanta*, cual es la de que *un* notario que otorga una escritura pública y/o contrato y/o documento incurre en una insalvable incompatibilidad al comparecer posteriormente en calidad de abogado ante un tribunal de justicia en representación de una de las partes otorgantes que, con posterioridad al otorgamiento del documento, reclama de la otra parte contraprestaciones contenidas en el documento.

Aduce la Mayoría, *en primer lugar*, que dicha conducta "da la falsa impresión de que [dicho notario] siempre estuvo parcializado con la parte en representación de la cual reclama" (opinión mayoritaria, pág. 567); esto es, entiende la Mayoría que el notario que así actúa viola los postulados contenidos en el Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, al incurrir en la "apariencia de conducta profesional impropia", existiendo, en opinión de la Mayoría, el peligro real de que el notario " 'falte a su fundamental deber de imparcialidad' " (opinión mayoritaria, págs. 567 y 568) y se alíe con el poderoso —el prestamista— en contra del débil.

Sostiene la Mayoría, *como segundo fundamento en apoyo de la norma que hoy establece*, que como en "toda acción en la que un instrumento notarial sea el objeto de la controversia, el notario siempre es testigo silente" (opinión mayoritaria, pág. 568), existiendo siempre, por tanto, "la *posibilidad* de que el notario sea llamado a testificar" —(énfasis suplido) íd.— dicha situación constituye un atentado latente contra los postulados del Canon 22 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, el cual dispone, en lo pertinente, que un abogado *debe evitar* testificar en beneficio o apoyo de su cliente y renunciar su representación cuando adviene en conocimiento de que puede ser llamado a declarar en su contra.

I

En cuanto al *primero* de los fundamentos, nos limitamos a señalar que el mismo *es contrario e inconsistente con* lo resuelto por este Tribunal en *In re Cancio Sifre*, 106 D.P.R. 386 (1977); *decisión que la Mayoría cita con aprobación y reitera en la decisión que emite en el día de hoy*. Allí resolvimos que *no* incurre en conflicto alguno de intereses, *ni en la apariencia de conducta impropia*, el abogado —y principal accionista— de una institución financiera que, en adición a desempeñar funciones como asesor de la misma, actúa como notario en los negocios prestatarios de dicha institución. Expresamos en dicho caso, en lo pertinente, que dicho abogado *no* había violado canon de ética alguno, por cuanto el "abogado no es empleado de su cliente [el banco] y mantiene una *independencia en sus determinaciones profesionales* que propicia su intervención como notario en actos y contratos en que su cliente de asesoría es parte". (Énfasis suplido y escolio omitido.)[1] Íd., pág. 398.

*Cabe preguntar*, ¿cómo puede existir en el presente caso el peligro de que el notario falte a su fundamental deber de imparcialidad y en la situación de hechos del caso de *In re Cancio Sifre*, ante —*la cual es más grave*— no exista dicho peligro o riesgo? *¿Cuál es la diferencia entre estos dos casos? ¿Es que existe alguna?*

No tenemos duda sobre el hecho de que el Tribunal tiene el poder inherente necesario para establecer la norma que estime procedente. *In re Cancio Sifre*, ante. Lo que *no* puede, o debe, hacer es *confundir a la profesión* mediante

---

[1] Con carácter prospectivo, sin embargo, establecimos la norma a los efectos de que un notario "no deberá autorizar documentos públicos en que sea parte una corporación de la cual tenga control económico en su condición de accionista mayoritario". *In re Cancio Sifre*, 106 D.P.R. 386, 399 (1977).

Ello no obstante, *y conforme lo resuelto en dicho caso*, un abogado *que sea empleado a sueldo* de una corporación —que se dedica a prestar dinero al público— *puede autorizar como notario* escrituras y documentos en que dicha corporación, *su patrono*, es parte interesada.

el establecimiento de *normas inconsistentes entre sí relativas al mismo asunto.*

En el presente caso, el Tribunal tenía *dos* (2) alternativas, cualesquiera de las cuales era correcta: ratificar la norma de *In re Cancio Sifre*, ante, o revocar la misma y establecer la hoy enunciada. *Hizo, sin embargo, lo único que no podía hacer*: ratificar la norma anterior y establecer una nueva que es inconsistente con aquélla.

## II

En relación con el segundo de los fundamentos, la posición del Tribunal es un *tanto* más difícil de entender. Se nos dice por la Mayoría que por razón de que existe *la posibilidad* de que el notario sea llamado a testificar en el pleito judicial, éste *no* debe radicar el pleito en cobro, o por incumplimiento, de las prestaciones contenidas en el documento otorgado y/o de las obligaciones sobre las cuales el mismo trata.

La *posibilidad* de que el notario sea llamado como testigo en el pleito, no hay duda, siempre existe. Ahora bien, la experiencia demuestra que en los cientos o miles de pleitos que se radican anualmente de ejecución de hipoteca, *se pueden contar con los dedos de nuestras manos las ocasiones en que se cuestiona o impugna en los mismos la actuación del notario que otorgó la escritura de hipoteca.*

Siendo ello así, ¿cuál es la razón para el establecimiento *de una prohibición, o veda, absoluta?* ¿Por qué no seguir, en esta clase de situaciones, *la norma general* aplicable a otras situaciones que rige en nuestra jurisdicción desde tiempo inmemorial? Esto es, ¿por qué no aplicar la norma *de que cuando surja el conflicto de intereses* es que el abogado viene obligado a retirarse del caso? Realmente no lo entendemos.

## III

En resumen, *no* cuestionamos la autoridad del Tribunal para establecer las normas que deben regir la profesión; ciertamente, repetimos, este Foro tiene poder inherente para ello.

Lo que objetamos, en primer lugar, es que se haya establecido la nueva norma sin que se revoque una anterior que resulta contradictoria a la hoy establecida; *situación que tendrá el efecto de confundir a los miembros de la profesión*, sobre todo cuando tomamos en consideración el hecho inaudito de que el Tribunal no sólo no revoca la vieja norma sino que, por el contrario, la reitera y ratifica.

En segundo término, objetamos el establecimiento de una norma que, a nuestra manera de ver las cosas, resulta ser *innecesariamente* restrictiva; la cual tendrá el efecto de afectar, trastocar y hacer más difícil la *forma y manera en que los abogados se ganan la vida en nuestra jurisdicción.*

Es por ello que disentimos.

— O —

Opinión disidente del Juez Asociado Señor Alonso Alonso.

Disiento de la norma enunciada por el Tribunal al resolver *de manera absoluta que, bajo ninguna circunstancia*, un abogado podrá comparecer a un tribunal a favor de una parte que reclama obligaciones nacientes de un contrato, formalizado por los otorgantes ante tal abogado *en su calidad de notario*, pues tal actuación lo pone en riesgo de aparentar haber actuado impropiamente como notario, ante los ojos de un lego.

La norma que sienta el Tribunal no sólo es errónea en su interpretación y aplicación de la doctrina de incompatibilidades, sino que, además, prohíbe una práctica avalada

por este Tribunal, y dada por buena entre los miembros de la profesión y la ciudadanía en general. La prohibición se establece sin más fundamento que el de evitar que el demandado se lleve la "falsa impresión de que [el abogado] siempre estuvo parcializado con la parte en representación de la cual reclama". Opinión mayoritaria, pág. 567.

Disiento, además, pues la opinión mayoritaria actúa en contra de uno de nuestros precedentes, a saber, *In re Cancio Sifre*, 106 D.P.R. 386 (1977), sin revocarlo, con la confusión e incertidumbre que ello causa. Parte, además, de una concepción errónea de lo que es el notario puertorriqueño y establece una norma absoluta, cuando pudo haber adoptado una norma como la recomendada por la comisión nombrada precisamente por este Tribunal —para redactar y someternos un reglamento notarial— que contenga las debidas salvaguardas para atender situaciones como la que tenemos ante nos y otras.

## I

El licenciado Colón Ramery, en representación de una de las partes comparecientes en un documento autorizado por él en calidad de notario, y en contra de la otra, reclamó contraprestaciones contenidas en el documento por él autorizado. Se trató de una escritura pública constitutiva de una hipoteca de bienes muebles mediante la cual el Sr. Roberto Vidal, como Presidente de Ebanistería La Ponceña, Inc., hipotecó ciertos bienes muebles en garantía de un préstamo otorgado por el Banco Financiero de Ahorro de Ponce. Ante el incumplimiento del deudor de los cánones convenidos, el licenciado Colón Ramery, en representación del Banco, demandó a los morosos en cobro. Los demandados no contestaron, dictándose sentencia *en rebeldía* a favor del demandante.

Como producto de tales hechos, y luego de ver frustrada su búsqueda de resarcimiento por la vía civil, el señor Vi-

dal radicó una querella contra el licenciado Colón Ramery, alegando que el querellado incurrió en conflicto de intereses porque participó como su asesor legal en la transacción con el banco, y luego en su contra como abogado del banco cuando lo demandaron en reclamación de la deuda. Veamos.

## II

No es de aplicación a la situación de autos la doctrina de conflicto de intereses regulada por el Canon 21 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

Como señaláramos en *García O'Neill v. Cruz*, 126 D.P.R. 518, 523 (1990), "[e]n este supuesto, técnicamente se requiere la existencia de una relación abogado-cliente dual conflictiva previo al examen de la existencia de un conflicto de intereses". Véanse, además: *In re Concepción Suárez*, 111 D.P.R. 486 (1981); *In re Roldán González*, 113 D.P.R. 238 (1982): *In re Rojas Lugo*, 114 D.P.R. 687 (1983); *In re Carreras Rovira y Suárez Zayas*, 115 D.P.R. 778 (1984); *Ortiz v. Soliván Miranda*, 120 D.P.R. 559 (1988); *In re Orlando Roura*, 119 D.P.R. 1 (1987); *In re Añeses Peña*, 113 D.P.R. 756 (1983). Esto es así porque sólo si ha existido una relación previa abogado-cliente se cumple el supuesto considerado en el canon de que el abogado esté en condiciones de poder utilizar información y confidencias adquiridas vigente aquella relación para perjudicar al cliente que se las suministró. Véase *In re Guzmán*, 80 D.P.R. 713 (1958); *In re Rodríguez Torres*, 104 D.P.R. 758 (1976); *In re Concepción Suárez*, supra. En general, Gilbert & Zadorozny, *Serving Two Masters: The Law of Lawyer Disqualification*, American Bar Association Section of General Practice, U.S.A., 1984; Nota, *What Constitutes Representation of Conflicting Interests Subjecting Attorney to Disciplinary Action*, 17 A.L.R.3d 835 (1968).

Además, como expresamos en *In re Colón Muñoz*, 131

D.P.R. 121 (1992), *el notario no representa a ninguna de las partes que ante él comparecen.*

En el caso de autos resulta claro que nunca existió una relación profesional abogado-cliente entre el querellante y el querellado. El querellado desde un principio actuó en calidad de representante legal del banco y en calidad de tal se desenvolvieron todas sus relaciones con el querellante.

Cuando único asesoró al querellante y le informó sobre las repercusiones legales de los negocios jurídicos realizados, lo hizo *en calidad de notario, en virtud de sus responsabilidades como funcionario público* y no en virtud de la existencia de una relación abogado-cliente entre éstos. Véanse: *In re Colón Muñoz*, supra; *In re Cancio Sifre*, supra. No existió una relación de confidencialidad entre ambos que requiera protección jurídica. "Las instrucciones o comunicación a un notario no son privilegiadas. Un notario se diferencia de un abogado en cuanto a esto." *Tomás Cano & Co. v. Robles et al.*, 32 D.P.R. 643, 648 (1923). El deber de informar y de dar orientación no es privado sino público, "no nace de una obligación del notario con su cliente por medio de un contrato jurídico, ni de la deontología, sino como *deber oficial"* —(énfasis en el original) *Chévere v. Cátala*, 115 D.P.R. 432, 438 (1984)— mediante un acto en el cual los otorgantes persiguen el fin de elevar un negocio privado a la categoría de documento o escritura pública. "El ejercicio de la abogacía y el del notario son dos cosas distintas. El abogado-notario ha de ser escrupuloso en deslindar los campos. El abogado representa los intereses de un cliente. El notario no representa a cliente alguno. Representa la fe pública. Es el testigo por excelencia que ha de dar forma al negocio convenido, y ha de advertir a los otorgantes de los aspectos legales del instrumento que ellos otorgan y que él autoriza. El notario no es, en esa función, abogado de ninguno de los otorgantes." *In re Lavastida et al.*, 109 D.P.R. 45, 86 (1979), opinión del Juez Asociado Señor Irizarry Yunqué, a la cual se unió el Juez

Asociado Señor Torres Rigual. Véase Exposición de Motivos de la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987 (4 L.P.R.A. sec. 2001 *et seq.*). *Constituye un grave error el equiparar la relación notario-otorgante a la de abogado-cliente. Su naturaleza jurídica y función social son claramente distintas.*

## III

Ahora bien, tal intervención como notario, ¿impedía al licenciado Colón Ramery exigir, a favor del Banco y en contra del querellante, el cumplimiento de las prestaciones constituidas, no en virtud de la existencia de un conflicto de intereses sino en virtud de la doctrina de incompatibilidad de funciones? Entiendo que no. Véase *García O'Neill v. Cruz*, supra.

En las ocasiones en las cuales hemos reprobado la actuación del ejercicio de la abogacía conjuntamente con el descargo de otras funciones y puestos públicos, lo hemos hecho en consideración de la posibilidad, cierta o aparente, de que en el momento *presente*, o en un *futuro próximo*, tal desempeño de funciones *de forma simultánea*[1] presente una incompatibilidad legal o ética; porque los requerimientos que le impone el actuar bajo una condición repugna a sus deberes inherentes bajo la otra, o porque se crea la apariencia de que en virtud del ejercicio de cierto cargo o funciones se puede obtener ventajas especiales en la condición de abogado postulante. Véanse: *García O'Neill v. Cruz*, supra; *In re Carreras Rovira y Suárez Zayas*, supra; *In re Ríos*, 112 D.P.R. 353 (1982); *In re Añeses Peña*, supra.

Nunca antes este Tribunal había resuelto que el desempeño *presente* como abogado podía crear la apariencia de conducta impropia en cuanto a una actuación *pasada* como notario. Por primera vez este Foro prohíbe el ejercicio de la

---

[1] "Dícese de lo que se hace u ocurre al mismo tiempo que otra cosa." *Diccionario de la Lengua Española*, 21ra ed., Madrid, Ed. Espasa-Calpe, 1992.

abogacía en circunstancias en las que lo que se intenta salvar es la apariencia de impropiedad en el desempeño de actuaciones pasadas; en este caso en su calidad de notario. Adviértase que en este caso *no está en controversia el que el licenciado Colón Ramery haya faltado a sus obligaciones legales y éticas en su actuación como notario.*

Hasta el día de hoy este Tribunal había repudiado la actuación dual de abogado y notario *únicamente* cuando ésta se producía en el transcurso de un pleito de naturaleza contenciosa. Esto es, se limitaba a prohibir que el abogado que actuaba a favor de un cliente en un pleito contencioso, fungiera además como notario, autorizando documentos y tomando juramento respecto a documentos relacionados con el transcurso *de ese litigio, como lo son declaraciones juradas y contestaciones a interrogatorios. Negrón et al. v. El Superintendente de Elecciones,* 11 D.P.R. 366, 370 (1906); *Rivera v. Cámara,* 17 D.P.R. 528, 537 (1911); *B. & L., Inc. v. P.R. Cast. Steel Corp.,* 114 D.P.R. 808, 810–813 (1983).

En ninguna otra circunstancia, fuera del transcurso de un litigio contencioso o durante él, y con respecto a documentos relativos a éste, habíamos reprobado la actuación dual abogado-notario. Esto es así, puesto que no existe ninguna *incompatibilidad inherente* al desempeño de ambas funciones. Al contrario, el requerimiento de ley de que el notario sea, además, un técnico conocedor del Derecho, es decir, que para poder ser notario primero hay que ser abogado, contradice la existencia de una incompatibilidad general en el ejercicio de ambas profesiones. *In re Meléndez Pérez,* 104 D.P.R. 770 (1976); *In re Cancio Sifre,* supra, pág. 396. Véase Ley de 8 de marzo de 1906. Así, en la Exposición de Motivos de la Ley Notarial vigente, Ley Núm. 75, *supra,*[2] el legislador expuso:

En el notario puertorriqueño se funden dos facetas esenciales

---

[2] 1987 Leyes de Puerto Rico 243.

en la administración de la justicia, tanto en su función como profesional o técnico conocedor del derecho como en su carácter de funcionario público. Ante su fe notarial se crean los derechos que emanan del tráfico jurídico de los bienes inmuebles.

*En esa función el notario puertorriqueño no es abogado de ninguno de los otorgantes, no representa a cliente alguno, representa a la fe pública, representa la ley para todas las partes.* La cualidad medular que lo distingue del Abogado, es su imparcialidad, y en tal condición debe actuar en un plano superior al de las partes. (Énfasis suplido.)

De tal modo, en *In re Cancio Sifre,* supra, caso particularmente relevante a la controversia de autos, resolvimos que no existía incompatibilidad alguna entre ejercer simultáneamente la función de abogado de una institución financiera y ser el notario autorizante de los documentos en que constan los negocios jurídicos en que se ha asesorado legalmente al banco. La confianza en el presupuesto de que "[e]l abogado no es empleado de su cliente y mantiene una independencia en sus determinaciones profesionales que propicia su intervención como notario en actos y contratos en que su cliente de asesoría es parte" —(escolio omitido) *In re Cancio Sifre,* supra, pág. 398— motivó nuestro dictamen. La apariencia de parcialidad del notario hacia su cliente de asesoría legal no fue suficiente para prohibir su actuación como notario en tales casos, "[d]e ahí que esa relación no esté proscrita en la Ley Notarial". *Íd.*

Y es que el sistema notarial y la fe pública de nada valdrían sin la presunción de que el notario, depositario de ésta, actuará conforme a sus obligaciones ético-legales. *En esa confianza descansa todo el andamiaje jurídico respecto a la profesión notarial,* razón por la cual el Estado le delega la capacidad de dar fe pública y de "dotar de seguridades las relaciones jurídicas libremente constituidas". Academia Sevillana del Notariado, *La seguridad jurídica y el notariado,* Madrid, Ed. Rev. Der. Privado, 1986, pág. 31.

El notario es un "profesional" en toda la extención de la palabra. *Pueblo v. Central Cambalache,* 62 D.P.R. 553, 561 (1943). "[P]or su condición de abogado, se funden dos facetas

esenciales en la administración de la justicia. La primera, la que surge como profesional del derecho, preparado académica e intelectualmente para las lides forenses y comparencias ante foros adjudicativos. Como tal está versado en la técnica jurídica y capacitado para dar consejos y servir de guía a todo interesado no sólo en este rol, sino en el de notario. En su segunda faceta, la de notario, es funcionario público investido de autoridad y con capacidad autenticadora y legalizadora en el plano de las relaciones privadas, imponiendo a los actos que ve y oye —*visus et audit*— una eficacia autenticadora cubierta con una presunción de veracidad, *producto neto que parte del supuesto de un leal acatamiento de los requisitos y formalidades de ejercer con fidelidad su encomienda.*" (Énfasis en el original suprimido y énfasis suplido.) *In re Feliciano*, 115 D.P.R. 172, 175 (1984).

Recientemente, en *In re Colón Muñoz*, supra, expresamos con meridiana claridad la naturaleza y funciones del notariado latino existentes en Puerto Rico. Allí señalamos:

De entrada, ubicamos las controversias ante nos dentro de la naturaleza y las funciones del notario de tipo latino existente en Puerto Rico. En apretada síntesis, el notario latino es aquel profesional del Derecho que ejerce una función pública que consiste en recibir, interpretar y dar forma legal a la voluntad de las partes, dar fe de los hechos, redactar los instrumentos adecuados a ese fin, conferirles autenticidad, conservar los originales de éstos y expedir copias que den fe de su contenido. En dicha función el notario puertorriqueño representa la fe pública y la ley para todas las partes. De ahí que, entre otras, debe dar el más fiel cumplimiento a la Ley Notarial de Puerto Rico, así como a las leyes fiscales que regulan el cobro de derechos en los instrumentos públicos que autorice al momento de las partes otorgar los mismos.

*Como profesional del Derecho tiene la misión de asesorar a quienes reclamen su ministerio y aconsejarles los medios jurídicos más adecuados para el logro de los fines lícitos que aquéllos se proponen alcanzar.*

En su función pública ejerce la fe pública notarial, la cual conlleva un doble contenido, a saber: (1) en la esfera de los hechos, la exactitud de lo que el Notario ve, oye o percibe por sus sentidos, y (2) en la esfera del Derecho confiere autenticidad y fuerza probatoria a las declaraciones de voluntad de las partes en el instrumento público redactado conforme a su juicio sobre los preceptos del ordenamiento jurídico para la validez y

eficacia del acto o contrato formalizado, y sobre la identidad y capacidad de las partes.

*El notario disfruta de plena autonomía e independencia en su función,* sujeto solamente en organización jerárquica a este Tribunal y a nuestra dirección administrativa a través de la Oficina de Inspección de Notarías.

En el ejercicio de su ministerio y en el descargo de la fe pública en él depositada, *el notario no puede tomar partido o bando porque él representa la ley para todas las partes. Su obligación de ilustrar, orientar y advertir ha de desplegarla para todos por igual, con imparcialidad.* (Énfasis en el original, escolios omitidos y énfasis suplido.) *In re Colón Muñoz,* supra, págs. 127–129.

¿Cómo explica este Tribunal el razonamiento de que no se afecta la imparcialidad del notario o no se crea apariencia de impropiedad cuando él ha sido el abogado asesor del banco en cuanto a los negocios contenidos en el documento notarial, pero sí se afecta si posteriormente ese notario reclama judicialmente a nombre del banco la satisfacción de las prestaciones convenidas? ¿Bajo cuál circunstancia es mayor la "falsa impresión" de estar parcializado? *No entendemos cómo esta Curia puede pautar la norma que hoy establece dejando inalterado nuestro pronunciamiento previo en In re Cancio Sifre, supra, y más aún citándolo autorizadamente.* Opinión mayoritaria, págs. 563–564.

No existe incompatibilidad entre las funciones desempeñadas por el licenciado Colón Ramery en el caso de autos. La responsabilidad del abogado-notario de evitar hasta la apariencia de conducta impropia no puede juzgarse por criterios tan subjetivos y sombríos como lo es la posibilidad de duda en la mente de un otorgante. ¿Qué relación profesional queda libre de esa posibilidad de desconfianza o incomprensión? El reclamo de apariencia de impropiedad de un único ciudadano, tal vez movido más por ansias revanchistas que por genuina incomprensión, lleva a este Tribunal a prohibir una práctica generalizada por décadas y dada por buena entre los miembros de nuestra profesión y la ciudadanía en general.

La duda y la desconfianza en las relaciones interperso-

nales son signos de nuestros tiempos. No debemos dejarnos arrastrar ciegamente por éstas, a riesgo de ser nosotros quienes ocasionemos "un grave daño a la institución del notariado y, sobre todo, a la fe pública notarial".(³) Opinión mayoritaria, pág. 567.

## IV

Ahora bien, existen ocasiones en las cuales la ética profesional *impide* al abogado litigar en contra de una parte otorgante a favor de la otra. Si durante el litigio se impugna la validez del documento notarial o la actuación del abogado en su calidad de notario porque, por ejemplo, se niega la autenticidad de la firma, se reclama incapacidad o se alega dolo o desconocimiento de los términos de la escritura, será deber del abogado que actuó como notario retirarse del caso, o si tiene conocimiento previo de tales alegaciones, abstenerse de llevarlo. También, si previo a su actuación como notario efectivamente representó a ambas partes en sus negociaciones para llegar al acuerdo plasmado en el documento público. *Cf. In re Orlando Roura*, supra. Asimismo cuando se plantee un problema en torno a

---

(³) Existen unos datos sobre la práctica de la notaría que resultan pertinentes a la controversia que tenemos ante nos y que, en síntesis, demuestran que no se justifica que este Tribunal adopte la norma enunciada hoy. Además, reflejan que la mayoría de los notarios mantienen una práctica limitada en lo concerniente a otorgamiento de escrituras y se infiere que tienen una práctica individual.

Un estudio realizado por la firma Estudios Técnicos encaminada a oscultar la opinión de los notarios sobre el escalonamiento de la fianza notarial, arroja los siguientes hallazgos:

1. "El tipo de práctica m[á]s común entre los notarios es la de autorizar tanto testimonios como escrituras. El 78% indicó tener dicha práctica; tan sólo un 20% se limita a autorizar testimonios mientras que un 2% solo autoriza escrituras."

2. Del Informe Anual de Actividad Notarial surge que "[p]ara la fecha del informe habían 5,130 notarios activos, de los cuales unos 4,786 (93%) radicaron el informe de actividad notarial correspondiente al año 1990, al momento que se efectuó la recopilación de los datos."

3. "Un poco más de una cuarta parte (28.53) de los notarios no autorizaron escrituras públicas durante ese año.

Cerca de la mitad de los notarios no superan las cantidad de 25 escrituras autorizadas en un año.". Véase *Informe sobre Escalonamiento de la Fianza Notarial*, Fondo Fianzas Notariales, Colegio de Abogados, 1993, págs. 5–7.

la *interpretación* de los términos y las condiciones de los negocios pactados, pues siempre cabe la posibilidad de ser llamado a testificar en apoyo de uno u otro de los otorgantes. 4 L.P.R.A. Ap. IX, C. 22. Tales consideraciones están plasmadas en la Regla 5 del Proyecto de Reglamento Notarial de Puerto Rico sometido por la Comisión sobre Reglamentación del Ejercicio y Admisión al Notariado de la Conferencia Judicial de Puerto Rico, la cual lee en lo pertinente:

> *Regla 5 Función dual de abogado y Notario*
>
> El Notario está impedido de representar a su cliente como abogado en la litigación contenciosa y a la vez servir de Notario en el mismo caso por el posible conflicto de intereses o incompatibilidades que puedan dimanar del mismo. Se exceptúan aquellos casos en que todas las partes se pongan de acuerdo para que alguno de los abogados actúe como Notario.
>
> *Podrá actuar el Notario como abogado en toda acción exparte, de jurisdicción voluntaria, en casos para exigir el cumplimiento de los contratos autorizados por él, así como en las ejecuciones de hipoteca y ejecuciones de sentencia. Podrá también, realizar actos posteriores a la ejecución, tales como el otorgamiento de la escritura de venta judicial, de partición y otras.*
>
> *El Notario deberá cesar de inmediato su función como abogado en cualquier acción en que su actuación como Notario o cualquier acuerdo plasmado u omitido en el documento fuere cuestionada.*
>
> No obstante, queda siempre al sano juicio del Notario, dentro de su responsabilidad profesional, decidir cuándo debe abstenerse de actuar, aún en casos en que su actuación estuviere permitida, pero que por sus particulares circunstancias en la dimensión ética podrían generar un potencial de conflicto. (Énfasis suplido.) *Borrador del Reglamento Notarial de Puerto Rico*, Conferencia Judicial de P.R., 1991, Cap. 1, R. 5, pág. 7.

*La norma nos parece sabia y debió prevalecer como la adoptada por este Foro.* Respetuosamente, disentimos.