CARMEN A. GARCÍA O'NEILL y OTROS, demandantes y recurridos, *v.* HON. ALEJANDRO (JUNIOR) CRUZ y OTROS, demandados y peticionarios.

*Número:* CE-89-858     *Resuelto:* 20 de junio de 1990

*Ramón Rosado Vela,* abogado del peticionario; *Rafael S. Fuentes Rivera,* de *Fuentes & Fuentes, pro se.*

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

El presente recurso nos permite examinar si existe conflicto de intereses o incompatibilidad de funciones de un abogado que representa a unos demandantes en un pleito de daños y perjuicios contra un municipio del cual dicho abogado es Asambleísta Municipal. Por los fundamentos que pasamos a exponer, resolvemos que existe incompatibilidad de funciones.

I

Para septiembre de 1987 la Sra. Carmen Ana O'Neill y otros instaron demanda de daños y perjuicios contra el Municipio de Guaynabo (el Municipio), la Guardia Municipal de dicho municipio, varios funcionarios de la misma, su aseguradora y el Estado Libre Asociado de Puerto Rico. Fundaron su acción en la alegada detención y arresto ilegal de sus hijos por parte de miembros de la Guardia Municipal de Guaynabo.

El Lcdo. Rafael Fuentes Rivera asumió la representación legal de los demandantes recurridos. Posteriormente, en las Elecciones Generales de 1988 el licenciado Fuentes Rivera fue elegido Asambleísta Municipal de Guaynabo. A pesar de este

hecho, el licenciado Fuentes Rivera continuó y continúa representando a los demandantes recurridos en el pleito de daños contra el Municipio.

El 20 de octubre de 1989 el municipio presentó al foro de instancia una moción para solicitar que se resolviera si con relación al licenciado Fuentes Rivera existía alguna incongruencia, incompatibilidad o posible conflicto de intereses entre el ejercicio de sus funciones como Asambleísta Municipal de Guaynabo y el de su práctica privada de abogado al representar a clientes en un caso contra dicho municipio, y si habría alguna diferencia por el hecho de que el caso fue presentado con anterioridad a que dicho abogado fuera elegido Asambleísta Municipal.

El licenciado Fuentes Rivera se opuso a dicha solicitud y alegó que no existía conflicto alguno en el ejercicio dual de sus funciones como Asambleísta Municipal y abogado que demanda al municipio del cual es Asambleísta. Adujo que, como Asambleísta Municipal, no constituía una mayoría en la Asamblea Municipal por su particular composición partidista;(1) que no existía una relación de abogado-cliente con la Asamblea Municipal, el Municipio o cualquiera de sus dependencias o miembros, y que no estaba en ninguna posición de ejercer influencia indebida en su posición como Asambleísta.

El foro de instancia determinó que no existía conflicto entre la posición como Asambleísta del licenciado Fuentes Rivera y su función como abogado de los demandantes recurridos en este caso.

De esa resolución recurre ante nos el Municipio y nos señala que erró dicho foro al resolver que no hay conflicto entre la posición de Asambleísta Municipal y la función como abogado del licenciado Fuentes Rivera en este caso. En auxilio de nuestra

---

(1)  Según el licenciado Fuentes Rivera, la Asamblea Municipal de Guaynabo está compuesta por dieciséis (16) miembros, de los cuales trece (13) pertenecen al Partido Nuevo Progresista, dos (2), incluso él, pertenecen al Partido Popular Democrático y uno (1) al Partido Independentista.

jurisdicción nos solicitaron la paralización de los procedimientos en el foro de instancia.

Mediante trámite de mostración de causa, solicitamos al licenciado Fuentes Rivera que expusiera las razones por las cuales no debíamos ordenar su renuncia inmediata a la representación legal de los demandantes recurridos en este caso. En auxilio de nuestra jurisdicción paralizamos los procedimientos en el foro de instancia.

El licenciado Fuentes Rivera ha comparecido. Resolvemos según lo intimado.

## II

La cuestión ante nos es novel.

■ Reiteradamente hemos sostenido nuestra facultad constitucional para reglamentar la conducta ética en el ejercicio de la abogacía, aun ante la alegación de incompatibilidad de funciones. *In re Rodríguez Torres*, 104 D.P.R. 758 (1976), y 106 D.P.R. 698 (1978); *In re Roldán González*, 113 D.P.R. 238 (1982); *In re Ríos*, 112 D.P.R. 353 (1982); *In re Rojas Lugo*, 114 D.P.R. 687 (1983); *In re Carreras Rovira y Suárez Zayas*, 115 D.P.R. 778 (1984).

## III

*Sobre el conflicto de intereses*

■ El Canon 21 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, regula lo relativo a los conflictos de intereses de los abogados en las relaciones con sus clientes. En lo pertinente al caso de autos dispone que:

> No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, *en beneficio de un cliente*, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con *otro cliente*. (Énfasis suplido.) 4 L.P.R.A. Ap. IX, C. 21.

■ Esta parte del Canon 21 del Código de Ética Profesional, *supra*, regula el conflicto entre los intereses de dos (2) o más clientes del abogado entre sí o con los intereses del abogado. En este supuesto, técnicamente se requiere la existencia de una relación abogado-cliente dual conflictiva previo al examen de la existencia de un conflicto de intereses. *In re Concepción Suárez*, 111 D.P.R. 486 (1981); *In re Roldán González*, supra; *In re Añeses Peña*, 113 D.P.R. 756 (1983); *In re Rojas Lugo*, supra; *In re Carreras Rovira y Suárez Zayas*, supra; *In re Pizarro Santiago*, 117 D.P.R. 197 (1986); *In re Secretario de Justicia*, 119 D.P.R. 363 (1987); *Ortiz v. Soliván Miranda*, 120 D.P.R. 559 (1988).

En *In re Concepción Suárez*, supra, concluimos que existe un conflicto de intereses, proscrito por el Canon 21 del Código de Ética Professional, *supra*, cuando un abogado representa en un pleito de divorcio y alimentos *pendente lite* a la esposa de un antiguo cliente en contra de éste. Véase, en igual sentido, *In re Orlando Roura*, 119 D.P.R. 1 (1987). En ambos casos existía una relación abogado-cliente con las dos (2) partes en litigio.

En *In re Añeses Peña*, supra, determinamos que no existía conflicto alguno en que el abogado que representaba a la A.C.A.A. en asuntos obrero-patronales participara en unas conferencias sobre aspectos técnico-legales de la negociación colectiva ofrecidas por el Instituto de Relaciones de Trabajo de la U.P.R. a la Unión de Empleados de la A.C.A.A. Fundamos nuestra decisión en que dicho abogado, que era profesor del Instituto de Relaciones del Trabajo, nunca había representado o asesorado a la Unión de Empleados de la A.C.A.A. en la negociación colectiva con el patrono, es decir, nunca había existido una relación abogado-cliente con la Unión.

En el caso de autos, el Municipio sostiene que existe un conflicto de intereses entre las funciones de abogado del licenciado Fuentes Rivera en un pleito civil contra el Municipio y su función como Asambleísta Municipal del municipio demandado en dicho pleito civil.

Concluimos que, técnicamente, no existe el conflicto de intereses proscrito por el Canon 21 del Código de Ética Profesional, *supra*. Veamos.

En *In re Roldán González*, supra, pág. 240, expresamos:

Los municipios están organizados como corporaciones políticas y jurídicas constituidas por sus habitantes. Art. 2 de la Ley Municipal, 21 de L.P.R.A. sec. 1102. En ese sentido, cada municipio es una unidad cuyo gobierno y funciones son compartidos por la asamblea municipal, en la que reside el poder legislativo, y por el alcalde, en quien reside el poder ejecutivo. Arts. 7 y 32 de la Ley Municipal, 21 L.P.R.A. secs. 1107 y 1251, respectivamente. El hecho de que en determinado momento haya conflicto entre ambos poderes, como sucede en particular cuando, como en el caso del Municipio de Aguadilla, el alcalde y la mayoría de los miembros de la asamblea municipal militan en partidos opuestos, *no destruye la unidad política y jurídica que es el municipio*. (Énfasis suplido.)

Como reconocen los recurrentes, en *In re Roldán González*, supra, los abogados querellados *representaban* y *asesoraban* a la Asamblea Municipal, a la vez que representaban a ciudadanos particulares en pleitos contra el Municipio. Es decir, existía una relación abogado-cliente *dual* que luego resultó conflictiva. Por ello allí concluimos que:

El conflicto de intereses es tan obvio que resalta a la vista y hiere la retina. *No es el alcalde demandado quien va a pagar la sentencia, sino el Municipio de Aguadilla, con sus fondos, quien ha de pagarla. La asamblea municipal es parte integrante del gobierno de ese municipio* y cliente de los querellados. *Los querellados se están beneficiando de su cliente, que es la asamblea, contra los intereses de la corporación municipal de la cual forma parte la asamblea. Esta conducta de los querellados está reñida con el Canon 21 del Código de [É]tica Profesional*, en particular con su segundo párrafo, que dice:

"No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente." (Énfasis suplido.) *In re Roldán González*, supra, pág. 242.

En el caso ante nos la situación es distinta. Aquí no existe una relación abogado-cliente entre el licenciado Fuentes Rivera y la Asamblea Municipal, el Alcalde o las instrumentalidades o dependencias del Municipio. No estamos, pues, ante la relación abogado-cliente dual conflictiva que está prohibida por el Canon 21 del Código de Ética Profesional, *supra.*

## IV

*Incompatibilidad de funciones*

Nuestra conclusión de que no existe un conflicto de intereses entre las funciones de abogado del licenciado Fuentes Rivera en el pleito civil contra el Municipio y sus funciones como Asambleísta Municipal no es óbice para que examinemos si existe incompatibilidad en el ejercicio de ambas funciones.

En *In re Carreras Rovira y Suárez Zayas*, supra, pág. 788, definimos la incompatibilidad como:

> . . . [T]érmino equivalente a antagonismo, oposición, repugnancia que tiene una cosa para unirse con otra, o dos o más personas entre sí. *También se refiere a la imposibilidad legal de simultanear dos o más cargos, funciones o misiones una misma persona.* El primer significado alude al orden físico, el segundo toca el aspecto moral y el último afecta el orden legal. *En materia deontológica se acepta que uno de los requisitos para el ejercicio de la abogacía es la compatibilidad de la actuación con la situación y circunstancias. La premisa es sencilla: quien no sea independiente no está en condiciones de ejercer la profesión.* (Énfasis suplido.)

■ Contrario al conflicto de intereses proscrito por el Canon 21 del Código de Ética Profesional, *supra*, la incompatibilidad de funciones no requiere una relación abogado-cliente dual. Basta con que en el ejercicio de la función de abogado su actuación sea incompatible con la situación y circunstancias del caso para que resulte obvio que la representación legal es impropia, por afectar la independencia profesional del abogado frente a otro interés público o privado.

Así, por ejemplo, en *In re Rojas Lugo*, supra, establecimos que era incompatible ejercer la profesión de abogado litigante

ante el Fondo del Seguro del Estado y la Comisión Industrial mientras paralelamente dicho abogado ocupaba el cargo de Presidente de la Unión que agrupaba a los empleados del Fondo del Seguro del Estado.

Adviértase que en dicho caso el abogado que litigaba en contra del Fondo del Seguro del Estado y de la Comisión Industrial no tenía una relación abogado-cliente con dichos organismos. De ahí que, técnicamente, no existiera un conflicto de intereses según definido en el citado Canon 21 del Código de Ética Profesional. Sin embargo, bastó la posibilidad de apariencia de influenciar a los unionados en los casos en que el abogado interviniera, para que le requiriéramos que renunciara a uno de los cargos.

▪ La norma de incompatibilidad entre las funciones legislativas o gubernamentales y las de abogado está contenida en el Canon 6 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, al disponer, *inter alia*, que:

> Un abogado *que ejerza su profesión y que además ocupe un cargo legislativo o gubernamental debe anteponer el interés público al de su cliente cuando ambos vengan en conflicto* e inmediatamente renunciar la representación del cliente. (Énfasis suplido.)

Bajo dicha disposición resolvimos en *In re Ríos*, supra, pág. 363, que:

> . . . existe incompatibilidad ética para un abogado, que es también legislador, al intervenir, defender, actuar y prestar sus servicios como abogado, sean o no remunerados, en los trámites, asuntos y casos en que un funcionario público es objeto de investigación —preliminar o final— por la Oficina del Contralor de Puerto Rico.

Allí se trataba de la representación legal que el abogado-senador brindó a un alcalde en unas investigaciones realizadas por la Oficina del Contralor. Por haber culminado dichas investigaciones y la participación del querellado, limitamos nuestra sanción a la censura.

▪ La norma de incompatibilidad ética en el ejercicio de diversas funciones realizadas por el abogado encuentra apoyo,

además, en el principio esbozado en el Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, de que el abogado debe evitar la apariencia de conducta impropia. Este principio intenta fomentar la confianza del público en la imparcialidad de nuestro sistema judicial al imponerle a uno de sus protagonistas —el abogado— el deber de lucir puro y libre de influencias extrañas a su gestión profesional y de eliminar la apariencia de que puede influenciar indebidamente en tal gestión. *Cf. In re Ríos Lugo*, 119 D.P.R. 568 (1987); *In re Rodríguez Torres*, supra, págs. 737–738, opinión disidente del Juez Asociado Señor Martín.

■ Teniendo como norte estos postulados éticos, concluimos que resulta incompatible la función del licenciado Fuentes Rivera como abogado de los demandantes recurridos en un pleito civil contra el Municipio y su desempeño como Asambleísta Municipal.

Al así concluirlo, no estamos pasando juicio sobre la conducta ética de una persona en su calidad *de miembro de una Asamblea Municipal. Cf. In re Rodríguez Torres*, supra, pág. 719.

## V

■ La Asamblea Legislativa aprobó la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico (Ley de Ética Gubernamental), Ley Núm. 12 de 24 de julio de 1985 (3 L.P.R.A. sec. 1801 *et seq.*), con el fin de "restaurar la confianza del pueblo en su Gobierno y en sus funcionarios públicos" y "para prevenir y para penalizar el comportamiento delictivo de aquellos funcionarios que, en el desempeño de sus labores gubernamentales, vulneren los principios básicos de una ética de excelencia". Exposición de Motivos de la Ley Núm. 12, *supra*, 1985 Leyes de Puerto Rico 709.

Las disposiciones de dicha ley aplican a las acciones de los asambleístas municipales de nuestros municipios. 3 L.P.R.A. sec. 1802(e) y (h).

El Art. 3.3(a) de la Ley de Ética Gubernamental, en lo aquí pertinente, dispone que:

Ningún *funcionario* o empleado aceptará un empleo o relaciones contractuales, de negocio o responsabilidades adicionales a las de su empleo o *cargo público,* ya sea en el Gobierno o *en la esfera privada* que, *aunque legalmente permitidos, tenga el efecto de menoscabar su independencia de criterio en el desempeño de sus funciones oficiales.* (Énfasis suplido.) 3 L.P.R.A. sec. 1823(a).

Además, el Art. 3.3(b) de la referida ley dispone:

Ningún funcionario o empleado público aceptará un empleo o relaciones contractuales de negocio con una persona, negocio o entidad que esté reglamentada por o que haga negocios con la agencia gubernamental para la cual él trabaja cuando el funcionario o *empleado público participe en las decisiones institucionales de la agencia o tenga facultad para decidir o influenciar las actuaciones oficiales de la agencia que tengan relación con dicha persona, negocio o entidad.* (Énfasis suplido.) 3 L.P.R.A. sec 1823(b).

De hecho, en el caso de autos, el 3 de septiembre de 1989 el Municipio planteó a la Oficina de Ética Gubernamental si viola las disposiciones de la *referida ley un asambleísta municipal* que, en el ejercicio de la práctica privada de su profesión de abogado, representa clientes en casos de demandas contra el Municipio del cual él era Asambleísta Municipal.

A dicha pregunta la Oficina de Ética Gubernamental respondió el 25 de octubre de 1989 lo siguiente:

Al aplicar esta disposición legal a los hechos esbozados en su carta, debemos concluir que para que el asambleísta no incurra en una violación a la Ley de [É]tica Gubernamental, éste se deberá de inhibir de participar en aquellas sesiones que celebre la Asamblea Municipal en las cuales se discutan hechos relacionados con los casos en los cuales el asambleísta represente la parte contraria al municipio o que tengan una relación directa o indirecta con los mismos.

Como vemos, la Ley de [É]tica Gubernamental no establece una prohibición absoluta que impida al asambleísta dedicarse a la práctica privada de su profesión, pero sí ordena su inhibición cuando su independencia de criterio al ejercer sus funciones oficiales pueda verse afectada. Petición de *certiorari,* Apéndice, pág. 13.

Esa es la solución que la Ley de Ética Gubernamental provee para la incompatibilidad de las funciones del Asambleísta Muni-

cipal en el caso de autos. Dicha solución fue dada al licenciado Fuentes Rivera *en su carácter de Asambleísta Municipal* en vista de que la Ley de Ética Gubernamental regula los aspectos éticos en el desempeño de tal cargo.

Dicha oficina, consciente de que sólo estaba ofreciendo una opinión con relación al cargo de Asambleísta Municipal y no de abogado, *advirtió* lo siguiente:

> Por otro lado y debido a *su pertinencia e importancia,* debemos citarle el C[a]non Número 6 de los Cánones de [É]tica Profesional (4 L.P.R.A., Ap. IX), que rigen la conducta de los miembros de la Profesión Legal en Puerto Rico, el cual expresamente reglamenta esta conducta. Específicamente el C[a]non Número 6, [*supra*], dispone lo siguiente y citamos:
>
> "Al prestar sus servicios profesionales ante organismos legislativos o administrativos el abogado debe observar los mismos principios de ética profesional que exige su comportamiento ante los tribunales. Es impropio de un abogado ocultar su gestión profesional ante dichas agencias gubernamentales mediante el empleo de terceros o de medios indirectos para promover determinada acción gubernamental en interés de su cliente. *Un abogado que ejerza su profesión y que además ocupe un cargo legislativo o gubernamental debe anteponer el interés público al de su cliente cuando ambos vengan en conflicto e inmediatamente renunciar la representación del cliente.* (Énfasis suplido.)"[2] Petición de *certiorari,* Apéndice, pág. 14.

---

[2] Un señalamiento similar fue hecho por la Administración de Servicios Municipales en su carta de 7 de noviembre de 1989, mediante la cual contestó la consulta que le hizo el Municipio de Guaynabo, en la que expresó lo siguiente:

"Es decir, si el licenciado al que hace referencia en su comunicación, de alguna forma, ha aprovechado su posición como Asambleísta para obtener contratos como abogado en demandas contra el municipio, ese método pudiera resultar contrario a las buenas costumbres y hasta al orden público establecido. Esto es así aunque la Ley Municipal no prohíbe expresamente dicha práctica.

"De otra parte, el Canon 6 del Código de [É]tica [Profesional, 4 L.P.R.A. Ap. IX,] que rige la conducta de los miembros de la profesión legal de Puerto Rico, establece que:

"'(. . .) Un abogado que ejerza su profesión y que además ocupe un cargo legislativo o gubernamental debe anteponer el interés público al de su cliente cuando ambos vengan en conflicto e inmediatamente renunciar la representación del cliente'." (Escolio omitido.) Petición de *certiorari,* Apéndice, págs. 16–17.

En dicha comunicación expresó, además, la Administración de Servicios Municipales lo siguiente:

"Consideramos que el licenciado debe abstenerse de representar a clientes demandantes del Municipio de Guaynabo ya que, siendo asambleísta, pudiera tener conocimiento

■ Sin embargo, la Oficina de Ética Gubernamental no pasó juicio sobre los aspectos éticos del ejercicio de la profesión de abogado del licenciado Fuentes Rivera, aunque le advirtió sobre ello. Tal función corresponde a este Tribunal.

■ En innumerables ocasiones hemos señalado que este Foro retiene intacto su poder disciplinario en todo lo que ataña a la conducta profesional de los abogados. *Cf. Claudio v. Ortíz*, 29 D.P.R. 435 (1921); *In re Ríos*, supra. Ello incluye al abogado-asambleísta.

■ Nuestras decisiones claramente ordenan que ante la incompatibilidad de funciones de un abogado *éste renuncie a una u otra función*. *In re Rojas Lugo*, supra.

## VI

El abogado que demanda al Municipio está demandando, a su vez, a la Asamblea Municipal. Debe recordarse que la Asamblea Municipal ejerce el Poder Legislativo en el Municipio y que dentro de sus funciones está la de aprobar el presupuesto general de ingresos y gastos del mismo. Art. 4.18 de la Ley Orgánica de los Municipios de Puerto Rico, 21 L.P.R.A. sec. 3068. Ello incluye la aprobación del pago, por sentencia o transacción, de las reclamaciones civiles contra el Municipio. Arts. 3.02(2) y 2.04(9) de la Ley Orgánica de los Municipios de Puerto Rico, 21 L.P.R.A. secs. 3002(2) y 2054(9), respectivamente.

■ En el caso de autos, el cargo de Asambleísta Municipal del licenciado Fuentes Rivera puede dar la apariencia de que está en posición de influenciar a los demás asambleístas en la aproba-

---

y/o acceso a información que le resultara útil para adelantar fines privados en contravención de los públicos.

"Esta situación de inminente conflicto es la que pretende evitar el precitado canon al preferir el interés público sobre el privado. No cabe duda que su función pública como Asambleísta se ve atentada al fungir como abogado en el sector privado y viceversa. Siendo ello así, deberá tomar las medidas pertinentes para que los casos pendientes ante su consideración sean tramitados por otro colega de Servicios Legales del Municipio de Guaynabo." Peticion de *certiorari*, Apéndice, pág. 17.

ción de las partidas de las reclamaciones civiles de sus clientes privados en contra del Municipio. El hecho de que el licenciado Fuentes Rivera se encuentre entre la minoría[3] de la Asamblea municipal no disipa, ante el ciudadano común, la apariencia de conducta profesional impropia y la aparente posibilidad de influencia indebida.

Además, la posición de Asambleísta Municipal[4] pone al licenciado Fuentes Rivera en una posición ventajosa ante el Municipio demandado. Tal posición le brinda la posibilidad de tener conocimiento y/o acceso a información sobre sus reclamaciones privadas, lo que muchas veces no estaría accesible al litigante común. Todo ello en perjuicio del interés público del Municipio. El Canon 6 del Código de Ética Profesional, *supra*, le imponía al licenciado Fuentes Rivera la obligación de anteponer el interés público al de sus clientes.

El hecho de que el pleito de autos haya sido instado antes de que el licenciado Fuentes Rivera fuera elegido a la Asamblea Municipal en nada varía nuestra conclusión. Precisamente, en el momento que fue elegido surgió la incompatibilidad ética del licenciado Fuentes Rivera para el ejercicio de ambas funciones.

En mérito de lo antes expuesto, *se dictará sentencia en la que se le ordene al licenciado Fuentes Rivera que, mientras ocupe el cargo de Asambleísta Municipal, se abstenga en su práctica privada de representar a clientes en pleitos en los cuales el Municipio de Guaynabo sea parte. Deberá, además, renunciar a la representación legal de los clientes en este caso y en los que en la actualidad tiene ante el foro de instancia, en los cuales el Municipio de Guaynabo sea parte. Siendo éste un caso novel, nuestro dictamen se limita a ordenar lo anterior sin otro pronunciamiento que el de apercibir al Lcdo. Rafael Fuentes*

---

[3]  La posibilidad de influenciar indebidamente a los miembros de la Asamblea Municipal no se mide a base de proporciones matemáticas. Tal premisa pierde de vista los acuerdos interpartidistas en la dinámica política de los cuerpos legislativos.

[4]  No estamos ante la situación en que el abogado-asambleísta es parte en una acción contra el Municipio o representa al cuerpo al cual pertenece en dicha acción para vindicar el interés público.

*Rivera que en el futuro dé cabal cumplimiento a los cánones del Código de Ética Profesional.*

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Negrón García concurre con opinión escrita. El Juez Asociado Señor Rebollo López concurre sin opinión escrita.

—O—

Opinión concurrente y de conformidad del Juez Asociado Señor Negrón García.

I

El génesis de la presente controversia deontológica es la demanda presentada por unos ciudadanos contra el Municipio de Guaynabo (el Municipio) por conducto del Lcdo. Rafael Fuentes Rivera, quien también es Asambleísta Municipal. La premisa inmersa *decisoria* se nutre de una innegable realidad: el gobierno municipal es una *sola* entidad política compuesta de "la rama legislativa y la rama ejecutiva". 21 L.P.R.A. sec. 2053(a). Según resolvimos en *In re Roldán González*, 113 D.P.R. 238, 240 (1982), bajo el diseño estatutario prevaleciente existe una conexión racional de carácter institucional unitario entre ambos cargos. De un lado, el Alcalde, como ejecutivo, representa al Municipio en todas las acciones judiciales (21 L.P.R.A. sec. 3002(2)), y del otro, la Asamblea Municipal, obligada a autorizar en el presupuesto, entre otras partidas, "el pago de sentencias de los tribunales de justicia" impuestas al Municipio (21 L.P.R.A. sec. 3068(7)).

II

La simultaneidad de funciones emergente del binomio abogado-asambleísta aflora una vez más dentro del abanico de posibilidades que genera "el vasto campo de la ética profesional '[c]uando se habla de incompatibilidades, lo primero que debe suponerse es

la existencia de alguna norma legal que establezca la prohibición del ejercicio de la abogacía y, a la vez, otra actividad, función o cargo. *Esas son, como se comprende, las incompatibilidades legales.* Sin duda, hay incompatibilidades *de otro orden,* por ejemplo, *moral* o material. *Si la incompatibilidad es de orden puramente moral la sanción es también moral*; si es material, en rigor debe hablarse de imposibilidad de hecho['.] Bielsa, *La Abogacía,* 181 Tercera Ed.". (Énfasis en el original.) *In re Rodríguez Torres,* 106 D.P.R. 698, 769–770 (1978), opinión disidente del Juez Asociado Señor Negrón García. Y en *In re Carreras Rovira y Suárez Zayas,* 115 D.P.R. 778, 788 (1984), definimos incompatibilidad como "la imposibilidad legal de [mantener] dos o más cargos, funciones o misiones una misma persona". Véanse, además: *In re Ríos,* 112 D.P.R. 353 (1982); *In re Rojas Lugo,* 114 D.P.R. 687 (1983).

Ciertamente un asambleísta municipal, al igual que un legislador, está investido y ostenta una capacidad representativa política nacida de unos comicios electorales. Por los poderes y prerrogativas que acompaña ese tipo de cargo, el "*'abogado* legislador o *político,* deberá señalarse por *una cautela muy especial,* preocupándose en todo momento de evitar que cualquier actitud o expresión suya, pueda ser interpretada como tendiente a aprovechar su influencia política o su situación excepcional como mandatario popular.' Parry, *op. cit.,* 117". (Énfasis suplido.) *In re Rodríguez Torres,* supra, págs. 779–780.

En este sentido, la situación de autos está regulada, sin ambigüedades, por el mandato deontológico del Canon 6 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, que, en lo pertinente, obliga al abogado que ocupa un cargo gubernamental a "anteponer el interés público al de su cliente cuando ambos vengan en conflicto e *inmediatamente renunciar la representación del cliente*". (Énfasis suplido.)

Nótese que la razón de este postulado surge precisamente cuando el legislador o funcionario se desempeña *coetáneamente* como abogado. En virtud de esta última condición es que se proyecta sobre el abogado-asambleísta el canon y se funda el

ejercicio de nuestra jurisdicción ético-disciplinaria. "Cuando se decide servir dos o más vocaciones simultáneamente, el principio de igualdad —nervio de nuestras instituciones democráticas— no admite que el servicio de una autorice la inmolación de las otras." *In re Rodríguez Torres*, supra, pág. 772.

## III

Dos (2) aclaraciones finales.

*Primero*, la norma de incompatibilidad existente en el Canon 6 del Código de Ética Profesional antes transcrito "no está dirigida a evitar una posible indebida influencia real o imaginaria, sobre jueces y fiscales, sino a reducir y eliminar la noción pública equivocada de ventaja indebida. Compartimos el criterio de Parry, quien en su extenso análisis del problema sobre incompatibilidad rechaza el argumento de menoscabo a la integridad de los jueces expresando '[e]s verdad que los estudios de los dirigentes políticos allegados a las esferas del gobierno son los más concurridos y tienen mejores asuntos; ello es debido más que a la influencia que puedan ejercer sobre los jueces, *a la creencia popular de la existencia de tal influencia.*' 2 *Ética de la Abogacía*, 117 (1940)". (Énfasis en el original y escolio omitido.) *In re Rodrígez Torres*, supra, pág. 775.

*Segundo*, distinto a situaciones del típico "conflicto de intereses encontrados" —enmarcado en el Canon 21 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX— ante el cual el abogado "debe renunciar la representación de *ambos* tan pronto surja una situación o conflicto", en el caso de incompatibilidades dimanantes del ejercicio de cargos públicos, la renuncia será, conforme el aludido Canon 6 del Código de Ética Profesional, del *cliente privado*. Véase *In re Guzmán Géigel*, 113 D.P.R. 122 (1982). Sin juzgar estados íntimos de conciencia, reconocemos que el abogado, al confrontar una situación de *incompatibilidad*, tiene la libertad de *relegar* el interés público y renunciar al cargo. Sin embargo, ello no le autorizaría a continuar la representación legal del cliente privado. En esas circunstancias, el interdicto

deontológico subsistiría en virtud del exordio preambular del Código de Ética Profesional que, *in fine*, proclama el principio de que al abogado no le es lícito hacer indirectamente lo que de modo directo le está vedado.