EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> José M. Molina Oliveras | 2013 TSPR 63 <br><br> 188 DPR ____ |

Número del Caso: AB-2008-221


Fecha: 30 de mayo de 2013

Abogado del querellado:

      Lcdo. José M. Sagardía


Oficina de la Procuradora General:

      Lcdo. Luis Román Negrón
      Procurador General

      Lcda. Tatiana Grajales Torruellas
      Subprocuradora General

      Lcda. Yaizamarie Lugo Fontánez
      Procuradora General Auxiliar




Materia: Conducta Profesional – Interpretación de la Ley número 105-2004 sobre restricciones a fiscales y procuradores para el ejercicio de la abogacía; censura enérgica.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In Re:

AB-2008-0221

José M. Molina Oliveras

RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de mayo de 2013.

El 15 de agosto de 2008 el Sr. Juan M. Sánchez Silva presentó una queja ante este Tribunal contra el Lcdo. José Molina Oliveras en la que le imputó que hizo una falsa representación de que era Fiscal cuando en realidad se desempeñaba como empleado de la Autoridad de Acueductos y Alcantarillados (A.A.A.). A continuación esbozamos los antecedentes fácticos e incidentes procesales que se encuentran ante nuestra consideración.

I

El Lcdo. José M. Molina Oliveras (licenciado Molina Oliveras o querellado) fue admitido al ejercicio de la abogacía el 6 de julio de 1994 y prestó juramento como notario el 16 de mayo de

1999. No obstante, el 10 de septiembre de 2003 renunció a su función como notario. El querellado tuvo un nombramiento de Fiscal Auxiliar II desde el 2002 hasta su renuncia en el 2010. Asimismo, debemos apuntar que al licenciado Molina Oliveras se le concedió una licencia sin sueldo en el año 2004 a solicitud del presidente de la A.A.A. Ello, específicamente para atender la situación de amenaza de huelga que enfrentaba dicha agencia.[1] Precisamente, es a partir de ese evento huelgario que surge la queja instada en su contra.

El Sr. Juan Sánchez Silva (quejoso), quien era empleado de la A.A.A. y miembro de la Unión Independiente Auténtica de Empleados de la Autoridad de Acueductos y Alcantarillados (U.I.A.), estuvo implicado en un incidente el 3 de diciembre de 2004, durante una huelga contra la A.A.A. Al quejoso se le imputó agredir a otro empleado unionado que intentaba cruzar la línea de huelga en unas instalaciones de esa corporación pública en Aguada. A raíz de este suceso, el Agte. Gustavo Pellot Ruiz (agente Pellot Ruiz) se presentó al lugar de los hechos para investigar lo ocurrido.[2]

Subsiguientemente, el 6 de diciembre de 2004 se presentaron denuncias por los delitos de agresión y alteración a la paz contra el señor Sánchez Silva. Escuchada la prueba, el foro primario determinó no causa

---

[1] Véase *Moción en cumplimiento de orden* del Lcdo. José Molina Oliveras, pág. 2.
[2] Apéndice del Informe del Procurador General, pág. 10.

en ambos cargos. Es pertinente mencionar que, a la vista de Regla 6 comparecieron el señor Sánchez Silva, el abogado de defensa, la alegada víctima de agresión, el agente Pellot Ruiz, un representante de la U.I.A. y el licenciado Molina Oliveras, quien se identificó como Fiscal Auxiliar del Departamento de Justicia.[3]

Luego de varios incidentes procesales, el señor Sánchez Silva presentó una queja ante este Tribunal contra el licenciado Molina Oliveras. Específicamente, arguyó que el querellado ejerció funciones como Fiscal durante la etapa investigativa y en la vista de causa probable para arresto. Todo ello mientras fungía como Director de Seguridad Corporativa de la A.A.A.[4] Por esa razón, sostiene que el querellado indujo a engaño a todas las partes en el proceso judicial y que su conducta constituyó una "falsa representación" como funcionario del Ministerio Público.[5]

Por su parte, en la contestación a la queja el licenciado Molina Oliveras sostuvo que al momento de los hechos disfrutaba de una licencia sin sueldo de su cargo como Fiscal en el Departamento de Justicia y laboraba en la A.A.A. como Director de Seguridad Corporativa, Flota y Emergencias.[6] Igualmente, el querellado alegó que su

---

[3] Íd. Véase la *Moción en cumplimiento de orden* del Lcdo. José Molina Oliveras.
[4] Queja AB-2008-221, pág. 2.
[5] Íd.
[6] Contestación a la queja, pág. 2. No obstante, en su *Moción en cumplimiento de orden*, pág. 1, el licenciado señala que ambas funciones eran compatibles, pues "se dirigían a proteger vida y

comparecencia a la vista de causa probable fue en representación de la A.A.A.[7]

Atendidos los escritos de las partes, el 28 de enero de 2009 remitimos la queja a la Oficina del Procurador General y le ordenamos que realizara una investigación y que preparara un informe.[8] Entre los hallazgos de la investigación efectuada por el Procurador surge que luego del incidente en la huelga, el licenciado Molina Oliveras se identificó como Fiscal ante el agente Pellot Ruiz en una comunicación telefónica que estos sostuvieron. Asimismo, instruyó al agente a presentar las denuncias por cargos criminales contra el quejoso. A esos efectos, el informe de incidente confeccionado por el agente el 4 de diciembre de 2004 menciona que el caso se citó "por instrucciones del Fiscal José Molina".[9]

Además, el informe del Procurador General revela que el día de la vista de causa probable para arresto, el quejoso y el agente Pellot Ruiz desconocían que el

---

propiedad, así como el procesamiento de infractores de los reglamentos y las leyes aplicables en la [A.A.A.]". Por ello, aduce que esa fue una de las razones por las que se le aprobó la licencia. Además, el licenciado admite que habló con el agente Pellot Ruiz y que este le informó sobre el incidente acaecido en la huelga. Sostiene que como Fiscal tenía el deber ministerial de investigar y proceder a someter el caso lo antes posible.

[7] Declaración jurada que acompaña la contestación a la queja, pág. 1.

[8] El 4 de junio de 2009 acogimos una solicitud de la Oficina del Procurador General para paralizar los procedimientos disciplinarios en contra del licenciado Molina Oliveras mientras la Oficina del Inspector General del Departamento de Justicia investigaba si el querellado incurrió en violaciones administrativas en sus funciones como Fiscal. Sin embargo, la investigación del Inspector General concluyó porque el 31 de julio de 2010 se hizo efectiva la solicitud de renuncia del licenciado Molina Oliveras a su puesto de Fiscal. Véase Informe del Procurador General, pág. 3.

[9] Apéndice del Informe del Procurador General, pág. 8.

licenciado Molina Oliveras trabajaba para la A.A.A.[10]  Por el contrario, ambos coinciden en que el querellado asistió al proceso judicial en funciones como Fiscal, ya que según estos realizó interrogatorios y participó en la argumentación final durante la vista.[11]  Así también, el Juez que presidió el proceso hizo constar la presencia del licenciado Molina Oliveras como representante del Ministerio Público en los pliegos de ambas denuncias.[12]

En vista de la prueba presentada, el Procurador General coligió que el licenciado Molina Oliveras realizó una falsa representación al agente Pellot Ruiz, al Tribunal y a los comparecientes en el proceso judicial de que estaba autorizado a ejercer sus funciones como Fiscal.[13]  De igual forma, señaló que al beneficiarse de una licencia sin sueldo, el querellado no era un Fiscal en funciones, sino un empleado de la A.A.A. con responsabilidades muy diferentes.  En consecuencia, concluyó que la lealtad del querellado como funcionario de la A.A.A. era con esa dependencia y no con el Ministerio Público, el cual en ese momento no lo supervisaba.[14]

En atención a lo acaecido, el Procurador General puntualizó que existe un asunto de credibilidad sobre los detalles de la conversación entre el agente Pellot Ruiz y el querellado previo a la denuncia, así como sobre lo

---

[10]Íd., págs. 12, 15.
[11]Íd.
[12]Apéndice del Informe del Procurador General, págs. 5-6.
[13]Informe del Procurador General, pág. 7.
[14]Íd.

acontecido en la vista y las funciones llevadas a cabo por el licenciado. No obstante, asevera que existe prueba clara, robusta y convincente para iniciar un procedimiento disciplinario contra el licenciado Molina Oliveras por infracción a los Cánones 35 y 38 del Código de Ética Profesional. Esto, pues el querellado realizó una falsa representación a los tribunales sobre que estaba autorizado y podía ejercer sus funciones como Fiscal en el referido caso.[15]

Examinados los antecedentes fácticos de la queja que nos ocupa, pasemos a exponer las normas que rigen el marco ético profesional.

## II

A. Como es sabido, "este Tribunal tiene el poder inherente para reglamentar la admisión a la profesión de abogado, así como para tomar medidas disciplinarias contra [aquellos] miembro[s] de la profesión que viol[en] las leyes y cánones del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, ed. 2012, pág. 209". In re Fontánez Fontánez, 181 D.P.R. 407, 416 (2011); In re Rodríguez Vázquez, 176 D.P.R. 168 (2009); In re Deynes Soto, 164 D.P.R. 327 (2005).

En el ejercicio de esa facultad reglamentadora, en reiteradas ocasiones hemos resaltado "que los Cánones de Ética Profesional establecen las normas mínimas de conducta que rigen a los miembros de la profesión legal en

---

[15]Íd., pág. 5.

el desempeño de su delicada e importante labor". In re Cotto Luna, res. en 20 de diciembre de 2012, 187 D.P.R. ___ (2013), 2013 T.S.P.R. 8; In re Peña Santiago, 2012 T.S.P.R. 109. Estas directrices disciplinarias tienen la finalidad de "promover un desempeño profesional y personal acorde con los más altos principios de conducta decorosa, ello para beneficio tanto de la profesión como de la ciudadanía y las instituciones de justicia del país". In re Gervitz Carbonell, 162 D.P.R. 665, 686 (2004); In re Ortiz Brunet, 152 D.P.R. 542 (2000). Por tal razón, "[e]l desempeño de la abogacía requiere en todo momento celo, cuidado y prudencia. La consecución de estos logros no admiten duda ni ambigüedad en la gestión profesional". In re Carreras Rovira y Suárez Zayas, 115 D.P.R. 778, 784 (1984).

En torno a ese extremo, es meritorio puntualizar que en su Preámbulo, los Cánones de Ética Profesional disponen el deber de todo abogado "de desempeñar su alto ministerio con la mayor y más excelsa competencia, responsabilidad e integridad". Preámbulo del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 1n. "Este mandato de moral profesional aplica siempre a todo 'juez, fiscal, abogado postulante, asesor o en cualquier otro carácter'". (Énfasis suplido). Preámbulo, supra, citado en In re Colton Fontán, 128 D.P.R. 1, 6 (1991).

Cónsono con lo enunciado, el Canon 35 dispone que "la conducta de cualquier miembro de la profesión legal ante

los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada". Canon 35, Código de Ética Profesional, *supra*. La importancia de este precepto yace en que "la verdad y la justicia están necesariamente juntas: por lo que sería intrínsecamente contradictorio administrar la justicia o reclamar su actuación, sin respetar la verdad". In re Colton Fontán, supra, pág. 112, citando a G. Del Vecchio, La obligación jurídica de la verdad, 11 Rev. Fac. Der. Y Ciencias Sociales de Montevideo 13, 25 (1960). Consiguientemente, esta norma "dispone que no es sincero ni honrado utilizar medios que sean inconsecuentes con la verdad y que no se debe inducir al juzgador a error mediante la utilización de artificios o de una falsa relación de hechos o del Derecho". In re Nieves Nieves, 181 D.P.R. 25, 42 (2011). Consecuentemente, "el abogado que provee al tribunal información falsa o que no se ajuste a la verdad, o que oculte información que deba ser revelada, incumple con este canon". Íd.

Por ello, hemos advertido que "la conducta de un abogado debe ser sincera y honrada frente a todos y ante todo tipo de acto". In re Ojeda Martínez, 185 D.P.R. 1068, 1074-1075 (2012); In re Pons Fontana, 182 D.P.R. 300 (2011). Se incumple este deber por el simple hecho de faltar a la verdad. El escenario de cumplimiento de esta norma implica el comportamiento del abogado "frente a todos: clientes, compañeros abogados y tribunales". In re

Nieves Nieves, supra, pág. 42. Ello, pues, es sobre los abogados en quienes "recae principalmente la misión de administrar la justicia" y por consiguiente, estos tienen el deber de "conducirse siempre con integridad ante los foros judiciales". Íd. En estos casos, no es defensa el hecho que "no se obre de mala fe, deliberadamente o sin la intención de engañar", así como tampoco es excusa el que no se haya causado daño a tercero. Íd. Lo esencial "para que se configure una infracción al Canon 35 es que se falte a los valores de honradez y veracidad, pilares de la profesión legal". Íd., pág. 43.

Por su parte, el Canon 38 del Código de Ética Profesional, *supra*, prescribe lo siguiente:

> *Canon 38. Preservación del honor y dignidad de la profesión*
> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. *En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia.* ...
> Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable. En observancia de tal conducta, el abogado debe abstenerse en absoluto de aconsejar y asesorar a sus clientes en otra forma que no sea el fiel cumplimiento de la ley y el respeto al poder judicial y a los organismos administrativos. (Énfasis suplido).

Vemos pues, que este precepto ético establece la responsabilidad del letrado de exaltar el honor y dignidad de la profesión mediante una conducta ejemplar. Asimismo, precisa mencionar que el deber de evitar la apariencia de conducta profesional impropia deriva del hecho de que cada letrado es un "espejo en el que se refleja la imagen de la profesión por lo que debe actuar, tanto en su vida profesional como en su vida privada, con limpieza, lealtad, y el más escrupuloso sentido de responsabilidad". In re Peña Santiago, 185 D.P.R. 764, 781 (2012).

Esta obligación ética fomenta "la confianza del público en la imparcialidad de nuestro sistema judicial". García O'Neill v. Cruz, 126 D.P.R. 518, 527 (1990). Con ese propósito, al abogado se le impone "el deber de lucir puro y libre de influencias extrañas a su gestión profesional y de eliminar la apariencia de que puede influenciar indebidamente en tal gestión". Íd.

Así, al interpretar el Canon 38 hemos dispuesto que "[b]asta con que en el ejercicio de la función de abogado su actuación sea incompatible con la situación y circunstancias del caso para que resulte obvio que la representación legal es impropia, por afectar la independencia profesional del abogado frente a otro interés público o privado". García O'Neill v. Cruz, supra, pág. 525. Observamos por consiguiente, que la incompatibilidad de funciones surge cuando un letrado se encuentra ejerciendo dos funciones antagónicas, opuestas o

con intereses encontrados. Tal conducta, ineludiblemente incide sobre el deber del abogado de aportar hacia la consecución de una mejor administración de la justicia y de evitar la apariencia de conducta impropia. Canon 38, 4 L.P.R.A. IX. Así, en In re Carrera Rovira y Suárez Zayas, supra, señalamos que:

> En materia deontológica se acepta que uno de los requisitos para el ejercicio de la abogacía es la compatibilidad de la actuación con la situación y circunstancias. La premisa es sencilla: quien no sea independiente no está en condiciones de ejercer la profesión. Íd., pág. 788.

En cuanto a cómo se manifiesta la incompatibilidad de funciones, la doctrina reconoce que puede ser por razones de derecho o de hecho. In re Corona Muñoz I, 141 D.P.R. 640, 647 (1996). La incompatibilidad de derecho presupone "la existencia de alguna norma legal que establezca la prohibición del ejercicio de la abogacía y, a la vez, otra actividad, función o cargo". In re Corona Muñoz I, supra, pág. 647, citando a R. Bielsa, La Abogacía, 3ra ed., Buenos Aires, Ed. Abeledo-Perrot, 1960, pág. 181. Mientras, la incompatibilidad de hecho se refiere a "cuando ambos puestos tienen incompatibilidades o conflictos más o menos permanentes en sus deberes, no meramente casuales". In re Corona Muñoz I, supra, pág. 647.

Considerando los principios que rigen la conducta ética, pasemos al análisis sobre los deberes y funciones de un abogado que desempeña el cargo de Fiscal.

B.   La Ley Orgánica del Departamento de Justicia, Ley 205-2004, 3 L.P.R.A. secs. 291 et seq., (Ley Núm. 205) establece los deberes y funciones del Fiscal.  Entre estos, figura la responsabilidad "de instar las causas criminales, civiles y especiales comprendidas dentro del marco de sus respectivas obligaciones". 3 L.P.R.A. sec. 294x.  Además, esta legislación le impone al Fiscal la obligación de observar las normas éticas en el ejercicio de su vida profesional y el deber de  "desempeñar su ministerio con integridad y capacidad y emitir un juicio informado en todas las situaciones *manteniendo siempre un compromiso con la verdad y la justicia*".  (Énfasis suplido). 3 L.P.R.A. sec. 294x (d).

Estos parámetros morales son fundamentales y permean la función de los integrantes del Ministerio Público. Ello, pues, los Fiscales como miembros de la profesión jurídica no están relevados ni excusados de exhibir los estándares éticos que promueven la confianza en nuestro sistema de justicia.  Más bien, dada la importancia de sus funciones, hemos sometido a los Fiscales "a estándares éticos más estrictos que los que obligan a la profesión en general, pues no sólo viene[n] obligado[s] a cumplir con los cánones que rigen la profesión de la abogacía, sino también a demostrar *imparcialidad* en su función inquisitiva".  (Énfasis suplido). <u>In re Marrero García</u>, supra, págs. 892-893.

Esta obligación y responsabilidad más abarcadora guarda estrecha relación con el valor fundamental de asegurar la confianza en las instituciones públicas. Bien lo expresó este Tribunal por voz del ex Juez Asociado Negrón García cuando afirmó que "la fortaleza o debilidad de las instituciones gubernamentales en una democracia guarda estricta correspondencia con la integridad o flaqueza de cada uno de sus funcionarios". In re Colton Fontán, supra, pág. 6. En ese contexto, debemos ser firmes y vigilantes del delicado ligamen que tiene la función del Fiscal en la consecución de un orden legal justo, imparcial y democrático.

Considerando los hechos de la queja ante nos, resulta imperativo recordar y subrayar que "[e]l descargo de la función social de los miembros de la profesión jurídica está atado inexorablemente al sistema democrático puertorriqueño, 'fundamental para la vida de la comunidad y donde la fe de la justicia se considera factor determinante en la convivencia social, [por lo cual] es de primordial importancia instituir y mantener un orden jurídico íntegro y eficaz, que goce de la completa confianza y apoyo de la ciudadanía'". Preámbulo del Código de Ética Profesional, supra; In re Colton Fontán, supra, pág.6. Para ello, todo abogado tiene "el deber de desempeñar su alto ministerio con la mayor y más excelsa competencia, responsabilidad e integridad". Preámbulo, supra; In re Colton Fontán, supra, pág. 6. En

consecuencia, el fiscal "como miembro de la clase togada [está] comprometido al esclarecimiento de la verdad y a procurar que se haga justicia". In re Pacheco Nieves, 104 D.P.R. 566, 567 (1976), voto concurrente y disidente; In re Colton Fontán, supra.

Acorde con lo intimado, hemos reconocido que la misión del Fiscal es "difícil y compleja", ya que está vinculada "al problema de las libertades fundamentales de la persona frente al Estado". In re Colton Foltán, supra, pág. 7. Precisamente, por las peculiaridades del cargo de Fiscal, la Corte Suprema de Estados Unidos ha enfatizado la importancia de administrar el Ministerio Público con "valentía e independencia". Imbler v. Pachtman, 424 U.S. 409, 423-424 (1976).

Guiados por estos principios vitales e imprescindibles para la protección de los valores de libertad y justicia en un sistema republicano de gobierno, nos hemos expresado sobre el cuidado ético que debe ejercer un Fiscal cuando ocupa otro puesto en el servicio público. A esos efectos, en In re Corona Muñoz I, supra, pág. 642, concluimos que un Fiscal que disfruta de una licencia sin sueldo concedida por el Secretario de Justicia, estaba impedido legalmente de suscribir un contrato de servicios profesionales para ejercer como Oficial Investigador del Senado. Así, expresamos que:

> Una licencia administrativa sin sueldo, que haya sido concedida por el Secretario de Justicia, sólo releva al Fiscal de descargar *temporalmente* sus deberes y responsabilidades. *Ésta no altera*

> *la investidura legal de su cargo y de su condición de Fiscal; tampoco le priva de sus prerrogativas.* No representa la libertad de desempeñarse como abogado (Oficial Investigador del Senado), pues existe una *absoluta incompatibilidad* —prohibición legal tajante— impuesta por la propia Asamblea Legislativa, en virtud de las características y de las limitaciones inherentes dimanantes del cargo. (Énfasis en el original). Íd., pág. 641.

Específicamente, al evaluar los hechos del caso según la ley vigente al momento identificamos que:

> Evidentemente estamos ante un contrato *típico* de prestación de servicios profesionales de abogado. Así lo caracteriza el propio Fiscal Corona Muñoz al comparecer y suscribirlo como *"Licenciado", no como fiscal.* De su faz, *ello choca contra la prohibición establecida de que ningún Fiscal puede ejercer la abogacía fuera del ámbito de sus funciones como Fiscal.* No puede argüirse de que lo hizo como Fiscal, pues una *licencia sin sueldo* no autoriza a un fiscal a ser investigador de otra agencia o poder contratar con esto un aumento de sueldo más allá del establecido por ley. (Énfasis en el original). In re Corona Muñoz I, supra, pág. 646.

De esa forma, en aquella ocasión afirmamos que una licencia sin sueldo releva al Fiscal temporeramente de sus deberes y responsabilidades, mas no lo separa del cargo. Íd., pág. 648.

Cabe destacar que para ese entonces estaba vigente la Ley Núm. 9 de 9 de marzo de 1905, Leyes de Puerto Rico 1904-1905, pág. 191 (Ley Núm. 9), que le prohibía a los Fiscales "ejercer la Abogacía" de manera general. Por tal fundamento, en In re Corona Muñoz I, supra, concluimos que ocupar simultáneamente el puesto de Fiscal y el de Investigador del Senado violaba "la prohibición establecida de que ningún Fiscal puede ejercer la abogacía

fuera del ámbito de sus funciones como Fiscal". Íd., pág. 646. En consecuencia, determinamos que existía una incompatibilidad de derecho entre ambos puestos.[16]

Sin embargo, esta ocasión nos brinda la oportunidad de interpretar por primera vez los cambios acontecidos en las limitaciones impuestas al Fiscal en cuanto al ejercicio de la abogacía. Esto, pues en el 2004 la precitada Ley Núm. 205 derogó la prohibición establecida en la Ley Núm. 9 y estableció la restricción vigente por la cual los Fiscales y Procuradores están vedados de fungir en "el ejercicio privado de la abogacía y la notaría mientras ocupen sus respectivos cargos". 3 L.P.R.A. sec. 294v. Como se puede observar, a diferencia de la derogada Ley Núm. 9 que prohibía el ejercicio de la abogacía en todos los ámbitos, la legislación vigente solo prohíbe el ejercicio de la profesión en el sector privado. En consecuencia, un Fiscal puede ocupar otro puesto en el sector público si cuenta con la debida autorización para así hacerlo. No obstante, ello no lo releva de sus responsabilidades éticas antes descritas.

A la luz de este marco doctrinario, procede atender los méritos de la queja que tenemos ante nuestra consideración.

---

[16] Señalamos que: "Como la ley expresamente le prohíbe al Fiscal Corona Muñoz ejercer la abogacía, existe claramente una *incompatibilidad de derecho*, por razón del cargo de Fiscal que ocupa, de ser, a la vez, abogado". (Énfasis en el original). In re Corona Muñoz I, 141 D.P.R. 640, 647 (1996).

III

De los hechos expuestos surge claramente que el licenciado Molina Oliveras ocupaba dos cargos al momento de celebrarse la vista de causa probable contra el señor Sánchez Silva por el incidente ocurrido en las instalaciones de la A.A.A. Esto es, el querellado ocupaba la posición de Fiscal Auxiliar II en el Departamento de Justicia, donde disfrutaba de una licencia sin sueldo y, a su vez, laboraba como Director de Seguridad Corporativa de la A.A.A. Asimismo, se desprende del legajo que el querellado fue notificado del incidente y al recibir la comunicación de parte del agente Pellot Ruíz se identificó como Fiscal y le instruyó a someter las denuncias contra el quejoso.[17] Además, el licenciado Molina Oliveras compareció al proceso judicial en contra del señor Sánchez Silva actuando como funcionario del Ministerio Público. Ello, al punto de que el propio juzgador que presidió la vista de Regla 6 lo identificó como Fiscal.[18]

En cada instancia, a saber, desde su intervención con el agente Pellot Ruiz en la investigación de los hechos, hasta su participación en la vista de Regla 6 contra el quejoso, el licenciado Molina Oliveras ejerció su posición de representante del Ministerio Público. El querellado, se identificó como Fiscal y ejerció funciones durante el

---

[17] En su *Moción en cumplimiento de orden* el querellado admite que habló con el agente Pellot Ruiz y que le instruyó que sometiera los cargos contra el quejoso lo antes posible. Indica pues, que este era su "deber ministerial". Véase esc. 6, *supra*.

[18] Véase Apéndice del Informe del Procurador General, págs. 4-5.

procesamiento criminal, al interrogar los testigos y argumentar el caso ante un Juez. Ello, mientras ocupaba el puesto de Director de Seguridad de la A.A.A. y estaba disfrutando de una licencia sin sueldo por el cargo de Fiscal.

De esta forma, frente al agente Pellot Ruiz, al quejoso y al magistrado, el licenciado Molina Oliveras actuó deshonrosamente, induciéndolos a creer que era un representante imparcial del Pueblo. Ello así, cuando en realidad estaba desempeñándose como empleado de la A.A.A., entidad que claramente tenía interés en el procesamiento criminal del quejoso. En ese contexto, es evidente la incompatibilidad de funciones. No existe duda que el desempeño de ambos puestos desplegaba funciones antagónicas, opuestas y con intereses encontrados. Es ineludible concluir que el querellado no podía descargar objetivamente su función de Fiscal. Esto, pues disfrutaba de una licencia sin sueldo y su lealtad estaba con la A.A.A. La licencia sin sueldo que le fue conferida jamás constituyó una autorización para utilizar las prerrogativas del cargo de Fiscal en aras de adelantar los intereses de la agencia para la cual trabajaba.

Estas acciones laceran la conducta que debe observar un Fiscal que disfruta de una licencia sin sueldo y se encuentra laborando en otro cargo en el servicio público. Al ocupar el puesto de Director de la Oficina de Seguridad y Emergencia con la A.A.A., el licenciado Molina Oliveras

ejercía funciones patentemente diferenciables de las de un Fiscal. Esas responsabilidades, le imponían un deber de lealtad para con la corporación. Consecuentemente, este no poseía la independencia de criterio ni la imparcialidad necesaria para ejercer cabal y éticamente su cargo como representante del Ministerio Público.

Como expusimos, el letrado asistió al tribunal mediante falsa representación, cuando en realidad representaba a la A.A.A. y sus intereses eran claramente incompatibles con la imparcialidad que se le requiere al Ministerio Público. Esas acciones condujeron a todas las partes identificar erróneamente al querellado como un Fiscal autorizado a ejercer funciones en el proceso judicial, ello en contravención de lo establecido en el Canon 35. La conducta de inducir a un foro judicial a tal error constituye una falta de sinceridad y honradez altamente reprochable a la luz de los estándares éticos que rigen la práctica de nuestra profesión y aseguran la confiabilidad del sistema de justicia.

Hemos observado que la Ley Núm. 205 no prohíbe que un Fiscal, mientras disfruta de una licencia sin sueldo, ejerza la abogacía en el sector público. Ahora bien, en virtud de esa concesión este debió abstenerse de ejercer funciones delegadas al Ministerio Fiscal. Más aun cuando los intereses de ambos puestos eran claramente incompatibles. Recordemos que el cargo de Fiscal requiere sobre todo imparcialidad en su función investigativa e

inquisitiva, mientras que el Director de Seguridad Corporativa de la A.A.A. tiene la obligación de velar y defender los intereses de esa dependencia pública. No hay duda de que la conducta del licenciado Molina Oliveras menoscabó su deber de integridad, capacidad e independencia, criterios necesarios para desempeñarse honrosamente en el cargo de Fiscal. Por consiguiente, colegimos que las acciones del querellado más allá de propiciar la apariencia de conducta impropia e infringir el Canon 38, amancillaron la dignidad de la profesión, así como la fe y seguridad de nuestras instituciones.

El despliegue de esta conducta es represible, pues no solo violentan los estándares éticos de la abogacía, sino que debilitan "la confianza del público en la imparcialidad de nuestro sistema judicial". García O´Neill v. Cruz, supra, págs. 526-527. Este postulado cobra mayor importancia en el caso de un Fiscal, que se rige por estándares éticos más estrictos y está llamado "al esclarecimiento de la verdad y a procurar que se haga justicia". In re Pacheco Nieves, 104 D.P.R. 566, 567 (1976). Como hemos reiterado, resulta contradictorio que se administre la justicia mientras se demuestra un claro menosprecio a la verdad, ya que ambos principios son esenciales para proteger las libertades y los derechos que garantizan nuestro sistema republicano de gobierno. In re Colton Fontán, supra, pág. 112.

Constatadas las faltas éticas imputables al licenciado Molina Oliveras, solo resta determinar la sanción disciplinaria que procede imponer. Para guiar nuestra discreción al momento de imponer sanciones por infracciones éticas, hemos delimitado los siguientes criterios: "(i) la buena reputación del abogado en la comunidad; (ii) el historial previo de éste; (iii) si esta constituye su primera falta y si ninguna parte ha resultado perjudicada; (iv) la aceptación de la falta y su sincero arrepentimiento; (v) si se trata de una conducta aislada; (vi) el ánimo de lucro que medió en su actuación; (vii) el resarcimiento al cliente; y (vii) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien a tenor con los hechos". In re Cotto Luna, supra, pág. 5.

Ahora bien, aunque el letrado ha desplegado una conducta reprochable bajo los estándares del Código de Ética Profesional, supra, debemos señalar que está admitido al ejercicio de la abogacía desde hace aproximadamente diecinueve años y que presentó su renuncia al cargo de Fiscal en el 2010. Como atenuante, surge el hecho que el querellado ha gozado de buena reputación en el periodo de tiempo en el cual ha pertenecido a la profesión de la abogacía. Consideramos además, que esta es la primera falta ética del licenciado Molina Oliveras en su récord profesional.

Concluimos pues, que el letrado infringió los Cánones 35 y 38 del Código de Ética Profesional. En atención a ello, reafirmamos que actuaciones de esta naturaleza no serán toleradas por este Tribunal, ya que menoscaban el respeto que se exige ante los tribunales y minan la confianza del Pueblo en nuestro sistema de justicia. Así, con el propósito de evitar la repetición de conductas como esta, hacemos un llamado general a los fiscales que se desempeñan en otros puestos del sector público, para que observen los estándares disciplinarios de la profesión de la abogacía. De esta forma, advertimos que exigiremos más de ellos por la importancia y el significado de su puesto en la administración de justicia.

IV.

Por los fundamentos que anteceden, **censuramos enérgicamente las acciones del licenciado Molina Oliveras y se le apercibe que de repetirse otra situación o conducta que incida sobre la normativa ética que rige la abogacía, este Tribunal podría imponerle sanciones disciplinarias más severas, incluyendo la suspensión indefinida del ejercicio de la profesión.** Advertimos a los fiscales que se desempeñan en puestos públicos con el beneficio de una licencia sin sueldo que deben ser prudentes y observar los parámetros de ética de la profesión, absteniéndose de ejercer ilegalmente su cargo. Actuaciones de esta índole no pueden tomarse livianamente, pues de ello dependen la honra de la profesión y los

fundamentos que sostienen la delicada balanza que asegura el funcionamiento íntegro y objetivo de nuestro sistema de gobierno. Ahora bien, luego de considerar la totalidad de las circunstancias y en el ejercicio de nuestra discreción, se archiva la queja.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez no interviene. El Juez Asociado seño Kolthoff Caraballo no intervino.

Publíquese.


                          Aida I. Oquendo Graulau
                       Secretaria del Tribunal Supremo